JONAS GREENE *vs.* GEORGE W. LUNT.

*Oath of town clerk—record of certificate of. Taxes—assessment and collection of. Land assessed—what is and is not a sufficient description of.*

The record, " Oxford, ss., March 3, 1862, personally appeared William Woodsum, and took the oath necessary to qualify him to discharge the duties of clerk of the town of Peru for the ensuing year, according to law, before me, Samuel Holmes, moderator. A true copy of certificate, William Woodsum, 'town clerk," is sufficient evidence of a compliance with R. S., c. 3, § 17 ; and that the oath prescribed in § 14 was administered.

The certificate duly assigned by the assessors, " that the foregoing pages contain an inventory of polls and estate, real and personal, liable to be taxed in" a town named, sufficiently indicates that the real estate described above lay in such town.

In the assessment of taxes on land of resident owners, the parcels taxed must be definitely and distinctly described, or no lien will attach.

Thus, neither of the following descriptions is sufficient: "Part of the two river lots joining N. Walker's and Pettingill farm, lots 1 and 2, range 1, 100 acres;"

Greene *v.* Lunt.

"A piece of land north-westerly of and adjoining S. G. Wait's land, lot 5, range 3, 6 acres;" "One-half of lot north-westerly of Luther Jackson's farm, lot 2, range 2, 50 acres;" "The lot joining B. Walton's farm, lot 1, range 2, 85 acres;' "A piece of land between A. J. Churchill and J. H. Weymouth, part of lot 7, range 3, 27 acres;" "One-half island opposite S. Holmes', 15 acres;" "A part of E. A. Pollard's farm, lot 6, range 5, 25 acres;" "Part of lot joining Josiah Hall's, lot 1, range 5, 40 acres;" "The lot being southerly and joining J. P. Hopkins' and S. R. Newell's wood-land, lot 3, range 4, 60 acres;" "Half of lot westerly of J. S. Holmes' farm and adjoining it, lot 4, range 2, 50 acres;" "A piece of land easterly of Worthly Pond, joining W. Harlen's farm, lot 7, range 5, 8 acres."

But each of the following is sufficient: "The island opposite N. Walker's, and above Alden's Ferry;" "Second lot from S. Holmes', lot 4, range 3, 100 acres;" "Second lot from D. L. Conant's land, lot 3, range 3, 85 acres;" "Larry Farm on the hill formerly owned by S. Roberts, being part of lot 1, in ranges 3 and 4, 75 acres;" and "Second lot from J. Lunt's, lot 6, range 3, 100 acres."

The sale of land for taxes will not be illegal, because the lists of assessments upon the polls and estates required by R. S., c. 6, § 56, contain no description of the lands assessed other than the number of acres and the numbers of the lots and ranges in which they are situated.

Nor because it does not affirmatively appear that "a record of the assessment and of the invoice and valuation from which it was made," "or a copy of it," was deposited in the assessors' or clerk's office, "before the taxes were committed to the proper officer for collection."

Nor because the warrant to the collector for the collection of State, county, and town taxes also contained a direction to collect a certain "sum voted by the inhabitants of school district, No. 9," when it did not appear that the provisions of R. S., c. 11, § 39, had been complied with.

Nor because it contained a direction to collect a deficient highway-tax when it did not appear that the highway surveyor gave the statute notice to the delinquent tax-payer, or returned to the assessors the lists required by R. S., c. 18, § 45.

Nor because it does not appear that prior to the notice of sale, the collector made a demand on the owner for the tax on the land advertised.

Nor because the collector's notice of sale did not designate the owner's "right," or contain any such description of the land "as is necessary to render it certain and plain," other than the number of acres and the number of lot and range.

Nor because the collector's certificate upon the notice filed with the town clerk did not specify what notice was given.

Nor because there was no evidence that the owner was notified of the sale as required by § 151, except so far as it appeared from the collector's return upon the back of the notice, and in his "return with a particular statement of his doings in making the sale," that he has "given the notice of said intended sale as required by law."

Nor because the collector's return to the town treasurer was not made within four days of the time notified for the sale, but was made within four days of the time to which the sale was adjourned and actually made.

Greene *v.* Lunt.

ON REPORT.

WRIT OF ENTRY to recover possession of eighteen parcels of land, situated in Peru, in this county, and claimed under a sale for taxes.

The plaintiff introduced the records of the town showing an election of officers at a town meeting held March 3, 1862.

The plaintiff introduced the following transcripts of the record:

" OXFORD, ss:—March 3, 1862.—Personally appeared William Woodsum, jr., and took the oath necessary to qualify him to discharge the duties of clerk of the town of Peru for the ensuing year, according to law, before me.

SAMUEL HOLMES, <em>Moderator</em>.

A true copy of certificate,

Attest:       WM. WOODSUM, JR., <em>Town Clerk</em>."

Extract from the inventory so far as it relates to the estate of George W. Lunt, defendant, a resident in 1862:

(The figures on the left are inserted to denote the number of parcels mentioned in the opinion.)

| | | | No. Lots | Range | No. Acres | Value |
|---|---|---|---|---|---|---|
| | | **LUNT'S LOWER TRACT.** | | | | |
| (1) | Lunt Geo. W. | | | | | $350.00 |
| (10) | do. | Second lot from D. L. Conant's land | 3 | 8 | 85 | 150.00 |
| (17) | do. | Half of lot westerly from S. Holmes' farm and adjoining it | 4 | 2 | 50 | 36.00 |
| (8) | do. | Second lot from S. Holmes' | 4 | 3 | 100 | 50.00 |
| (13) | do. | One-half island opposite S. Holmes' | | | 15 | 100.00 |
| (9) | do. | Second lot from J. Lunt's | 6 | 3 | 100 | 70.00 |
| (15) | do. | Part of lot joining Josiah Hall's | 1 | 5 | 40 | 80.00 |
| (12) | do. | Farm on the Hill, formerly owned by S. Roberts, being part of | 1 1 | 3} 4} | 75 | 250.00 |
| (14) | do. | A part of E. A. Poland's farm | 6 | 5 | 25 | 15.00 |
| (18) | do. | A piece of land easterly of Worthley pond, joining W. Harlen's farm | 7 | 5 | 8 | 25.00 |
| (11) | do. | A piece of land between A. J. Churchill and J. H. Weymouth, part of | 7 | 3 | 27 | 100.00 |
| (16) | do. | The lot being southerly and joining J. P. Hopkins' and S. R. Newell's wood-land | 3 | 4 | 60 | 125.00 |
| | | **LUNT'S UPPER TRACT.** | | | | |
| (7) | do. | The lot joining W. B. Walton's farm | 1 | 2 | 55 | 175.00 |
| (3) | do. | Part of the two river lots joining N. Walker's and Petengill farm | 1 2 | 1} 1} | 100 | 300.00 |
| (6) | do. | One-half of lot north-westerly of Luther Jackson's farm | 2 | 2 | 50 | 300.00 |
| (4) | do. | The Cyrus Keen farm | 6 | 2 | 30 | 75.00 |
| (5) | do. | A piece of land north-westerly of and adjoining S. G. Wait's land | 5 | 3 | 6 | 25.00 |
| (2) | do. | The island opposite N. Walker's and above Alden's ferry | | | 6 | 50.00 |

Greene *v.* Lunt.

The foregoing pages contain an inventory and valuation of polls and estates, real and personal, liable to be taxed in the town of Peru for State, county, and town taxes for the year 1862, as it existed on the first day of April of said year.

JOHN KKIGHT, } *Assessors of*
JONAS GREENE, } *Peru.*

RECORD OF ASSESSMENT OF HIGHWAY TAX FOR 1862.

| Names of Persons liable to be taxed in the town of Peru. | No. Polls. | Poll Tax. | Taxes on Personal Estate. | Taxes on R. Estate. | Total amt of tax. |
|---|---|---|---|---|---|
| Lunt George W.,.......................................1 | | $1.00 | $2.62 | $7.00 | $11.32 |
| *     *     *     *     * | | | | | |

Record of assessment of highway and money tax, and names of persons liable to be taxed in the town of Peru for 1862.

| | No. Polls. | Poll Tax. | Taxes on Personal Estate. | Taxes on R. Estate. | Total amt of tax. |
|---|---|---|---|---|---|
| Lunt George W...........................................1 | | 1.00 | 2.23 | 5.95 | 9.18 |
| *   *   *   *   * | | | | | |

| LUNT'S LOWER TRACT. | No. Lots. | Range. | No. Acres. | Value. | Highway Tax. | Money Tax. |
|---|---|---|---|---|---|---|
| Lunt Geo. W.,...............................3 | | 3 | 85 | $1.50 | $8 00 | $2.55 |
| do...............................4 | | 2 | 50 | 36 | 72 | 61 |
| do...............................4 | | 3 | 100 | 50 | 1.00 | 85 |
| do.   One-half of island............... | | | 15 | 100 | 2.00 | 1.70 |
| do...............................6 | | 3 | 100 | 70 | 1.40 | 1.19 |
| do...............................1 | | 5 | 40 | 80 | 1.00 | 1.36 |
| do...............................1, 1 | | 3 } 4 } | 75 | 250 | 5.00 | 4.25 |
| do...............................6 | | 5 | 25 | 15 | 30 | 25 |
| do...............................7 | | 5 | 8 | 25 | 50 | 42 |
| do...............................7 | | 3 | 27 | 100 | 2.00 | 1.70 |
| do...............................8 | | 4 | 60 | 125 | 2.50 | 2.12 |
| **LUNT'S UPPER TRACT.** | | | | | | |
| do...............................1 | | 2 | 55 | 175 | 3.50 | 2.98 |
| do...............................1 }, 2 } | | 1, 1 | 100 | 300 | 6.00 | 5.10 |
| do...............................2 | | 2 | 50 | 300 | 6 00 | 5.10 |
| do...............................6 | | 2 | 30 | 75 | 1.50 | 1.27 |
| do...............................5 | | 3 | 6 | 25 | 50 | 42 |
| do.   Island, | | | 6 | 50 | 1.00 | 85 |

REMARKS ON THE FOREGOING ASSESSMENTS FOR 1862.

We have assessed on the polls and estates of resident proprietors, and on the estate of non-resident proprietors in the town of Peru, the sum of three thousand dollars, voted by the town, with an overlay not exceeding five per cent, the aforesaid sums to be raised and expended in labor and materials on the highways in said town ;. the same we have committed to the several highway surveyors in due form of law. We have assessed the tax at two cents on the dollar. We have assessed on two hundred and twenty-one polls,

at one dollar each, with an inventory of ($138,323), one hundred and thirty-eight thousand three hundred and twenty-three dollars.

JOHN KNIGHT, ⎫
JONAS GREENE, ⎬ *Assessors of*
OTIS WYMAN, ⎭   *Peru.*

PERU, April 28, A. D. 1862.

We have assessed the money tax on the polls and estates of resident inhabitants and on the estate of non-resident proprietors liable to be taxed in the town of Peru for the year 1862, at one cent seven mills on the dollar. Before making the money tax we deducted from the inventory one thousand five hundred forty-five dollars, it being the town-farm and stock, making the inventory stand $136,778. We assessed on one hundred and ninety-seven polls at one dollar on the poll. We have assessed five hundred and one dollars and fifty-seven cents State tax ($501.57); also a county tax of three hundred and five dollars and eighty-four cents (305.84) county tax, and one thousand dollars voted by the town last March to defray the town charges ($1000). Also six hundred and seventy-five dollars for the support of schools ($675), with an overlay of forty-one dollars and eighteen cents ($41.18), the same we have committed to the collector for collection, with a warrant, in due form of law, for collecting and paying over to the several treasurers.

JOHN KNIGHT, ⎫
JONAS GREENE, ⎬ *Assessors of*
OTIS WYMAN, ⎭   *Peru.*

PERU, June 11, A. D. 1862.

The demandant introduced the warrant to the collector of the town of Peru for the year 1862, dated June 11, 1862, for collecting of State, county, and town taxes for said year, and the commitment of the tax bills on list of same date which were admitted by defendant to be in due form, properly executed and signed by the three assessors of Peru for the year 1862; from the tax-list the following extracts are made:

Greene *v.* Lunt.

COLLECTOR'S TAX LIST FOR 1862.

| | Polls. | Poll Tax. | R. Estate. | Personal. | Amt. Tax |
|---|---|---|---|---|---|
| Lunt Geo. W., | 1 | $1.00 | $5.95 | $2.23 | $9.18 |

COLLECTOR'S TAX LIST FOR 1862.—*Resident Land Continued.*

| | No. Lots. | Range | No. Acres | Value | Amount of Tax |
|---|---|---|---|---|---|
| **LUNT'S LOWER TRACT.** | | | | | |
| Lunt Geo. W., | 3 | 3 | 85 | $150 | $2.55 |
| do. | 4 | 2 | 50 | 36 | 61 |
| do. | 4 | 3 | 100 | 50 | 85 |
| do.      One-half of island, | | | 15 | 100 | 1.70 |
| do. | 6 | 3 | 100 | 70 | 1.19 |
| do. | 1 | 5 | 40 | 80 | 1.86 |
| do. | 1 } 1 | 3 4 | 75 | 250 | 4.25 |
| do. | 6 | 5 | 25 | 15 | 25 |
| do. | 7 | 5 | 8 | 25 | 42 |
| do. | 7 | 3 | 27 | 100 | 1.70 |
| do. | 3 | 4 | 60 | 125 | 2.12 |
| **LUNT'S UPPER TRACT.** | | | | | |
| do. | 1 | 2 | 55 | 175 | 2.98 |
| do. | 1 } 2 | 1 1 | 10⅜ | 300 | 5.10 |
| do. | 2 | 2 | | 300 | 5.10 |
| do. | 6 | 2 | 20 | 75 | 1.27 |
| do. | 5 | 3 | 6 | 25 | 42 |
| do.      Island, | | | 6 | 50 | 85 |

NOTICE.—The resident proprietors of the following tracts of land or real estate in the town of Peru, in the county of Oxford, are notified that the same are taxed in the tax-list committed to the subscriber, the collector of taxes for the said town of Peru, for the year one thousand eight hundred and sixty-two; that the taxes assessed on the same remain unpaid; that nine months from the date of the assessment have expired.

| Names of Owners. | ESTATE TAXED. | No. Lots. | Range | No. Acres | Amt. Tax unpaid. |
|---|---|---|---|---|---|
| Lunt Geo. W., | The stand where he resides, | | | | $5.95 |
| do. | Lunt's Lower Tract, | 3 | 3 | 85 | 2.55 |
| do. | ,,      ,,      ,, | 4 | 2 | 50 | 61 |
| do. | ,,      ,,      ,, | 4 | 3 | 100 | 85 |
| do. | One-half of island in front of S. Holmes, | | | 15 | 1.70 |
| do. | Lunt's Lower Tract, | 6 | 3 | 100 | 1.15 |
| do. | ,,      ,,      ,, | 1 | 5 | 40 | 1.36 |
| do. | ,,      ,,      ,, | 1 | 3 } 4 | 75 | 4.25 |
| do. | ,,      ,,      ,, | 6 | 5 | 25 | 25 |
| do. | ,,      ,,      ,,  East of pond, | 7 | 5 | 8 | 42 |
| do. | ,,      ,,      ,, | 7 | 3 | 27 | 1.70 |
| do. | ,,      ,,      ,, | 3 | 4 | 60 | 2.12 |
| do. | Lunt's Upper Tract, | 1 2 | 1 } 1 | 100 | 5.10 |
| do. | ,,      ,,      ,, | 2 | 2 | 50 | 5.10 |
| do. | ,,      ,,      ,, | 1 | 2 | 55 | 2.98 |
| do. | ,,      ,,      ,, | 6 | 2 | 30 | 1.27 |
| do. | ,,      ,,      ,, | 5 | 3 | 6 | 42 |
| do. | Island above Alden's Ferry, | | | 6 | 85 |

And if no person shall appear to discharge said tax on or before the twelfth day of May next, at one o'clock in the afternoon, I shall proceed to sell at Jonas Greene's store in said town of Peru, by public auction to the highest bidder, so much of said respective tracts or parcels of real estate or land as shall be sufficient to discharge said taxes and all necessary charges.

OTIS WYMAN, *Collector of taxes for said town of Peru.*

A true copy. Attest: OTIS WYMAN, *Collector.*

PERU, March 28, 1864.

I hereby certify that the foregoing is a true copy of the notice of the aforesaid intended sale, and that I have given notice of said intended sale as required by law.

OTIS WYMAN, *Collector of taxes for said town of Peru.*

PERU, March 28, 1864.

| Five cent stamp. | Received and recorded, March 28, 1864. WM. WOODSUM, JR., *Town Clerk.* |

To the town treasurer of the town of Peru, in the county of Oxford, and State of Maine:

This is to certify that I, Otis Wyman, collector of taxes for the town of Peru, aforesaid, for the year 1862, pursuant to the law of said State, have sold this twelfth day of May, A. D. 1864, the real estate of George W. Lunt, a resident owner or proprietor, for payment of taxes at said time remaining due and unpaid, and in the schedule following is set forth the amount of land sold, being the same on which the taxes were unpaid, the name of the owner of said lots or parcels of land, the amount of taxes for which each was sold, and the legal cost and charges of said sale and the purchaser of each parcel, and I have executed deeds of the several parcels to the persons entitled thereto, and on this 16th day of May, A. D. 1864, I lodged this certificate and said deeds with you to be disposed of as the law requires:

Greene *v.* Lunt.

SCHEDULE.

| Name of owner. | Quantity of Land Sold. | Amt. Tax due and unpaid. | Cost and Charges. | Name of Purchaser. |
|---|---|---|---|---|
| George W. Lunt. | ¾ of an acre. | $5.95 | $0.66 | Jonas Greene. |
| do. | 85 acres | 2.55 | 66 | do. |
| do. | 50 „ | 61 | 66 | do. |
| do. | 100 „ | 85 | 66 | do. |
| do. | 15 „ | 1.70 | 66 | do. |
| do. | 100 „ | 1.15 | 66 | do. |
| do. | 40 „ | 1.36 | 66 | do. |
| do. | 75 „ | 4.25 | 66 | do. |
| do. | 25 „ | 25 | 66 | do. |
| do. | 8 „ | 42 | 66 | do. |
| do. | 27 „ | 1.70 | 66 | do. |
| do. | 60 „ | 2.12 | 66 | do. |
| do. | 55 „ | 2.98 | 66 | do. |
| do. | 100 „ | 5.10 | 66 | do. |
| do. | 50 „ | 5.10 | 66 | do. |
| do. | 30 „ | 1.27 | 66 | do. |
| do. | 6 „ | 42 | 66 | do. |
| do. | 6 „ | 85 | 66 | do. |

In witness of all which I hereunto subscribe my name, this 16th day of May, A. D. 1864.

| Five cent stamp. |

OTIS WYMAN,

Collector of the town of Peru for 1862.

OXFORD, SS., May 16, 1864.

Personally appeared the above-named Otis Wyman, and made oath that the above certificate, by him subscribed, is true. Before me, SAMUEL HOLMES, *Justice of the Peace.*

Recorded and lodged with me,

WM. H. WALKER, *Town Treasurer of Peru.*

(EXTRACT FROM WARRANT TO COLLECTOR, 1863.)

"To Wm. R. Greene, collector of the town of Peru, within the county of Oxford, GREETING.

In the name of the State of Maine, you are required to levy and collect of the several persons named in the list herewith committed unto you, each one his respective proportion therein set down of the sum total of such list, it being this town's proportion of a tax or assessment of $495,366.99, by a law of the legislature of said State passed the 24th day of March, A. D. 1861, to apportion and assess the same on the inhabitants of this State, also said town's proportion of a tax or assessment of $12,000, granted by a resolve of the legislature of said State passed at the last session, upon an estimate made by the court of county commissioners of the county of Oxford, of sums necessary for defraying the charges of the county for

the year ensuing, together with the sums voted by the inhabitants of said town of Peru, in legal town meeting held on the 2d day of March last, for the service of the town, and the sum voted by the inhabitants of school district No. 9 in said town. . . .

Given under our hands and seals, by virtue of a warrant from the treasurer of the State of Maine, and also a warrant from the clerk of the court for said county commissioners of Oxford county, and the votes of said town of Peru, and the vote of the inhabitants of school district No. 9, on the 19th day of June, in the year of our Lord one thousand eight hundred and sixty-three."

(Official signatures of assessors.)

(EXTRACT FROM WARRANT TO COLLECTOR, 1864.)

" To Wm. K. Greene, collector of the town of Peru, within the county of Oxford,                                          GREETING.

In the name of the State of Maine, you are required to levy and collect of the several persons named in the list herewith committed unto you, each one his respective proportion therein set down of the sum total of such list, it being this town's proportion of a tax or assessment of $1,321,571.41, by a law of the legislature of said State, passed the 25th day of March, A. D. 1864, to apportion and assess the same on the inhabitants of this State. Also said town's proportion of a tax or assessment of $9,000 granted by a resolve of the legislature of said State, passed at the last session, upon an estimate made by the court of county commissioners of the county of Oxford, of sums necessary for defraying the charges of the county for the year ensuing, together with the sums voted by the inhabitants of said town of Peru, in legal town meeting held on the 7th day of March last, for the service of the town and a deficient highway tax, for 1863, of $63.33."

The plaintiff also introduced record evidence of the collector's " return with a particular statement," etc., and of numerous other facts not necessary to be stated here.

*Bolster & Wright,* (and with them) *D. Hammons,* for the plaintiff.

*A. Black*, for the defendant.

1. In the discharge of all duties connected with the assessment or collection of taxes, or in the sale of lands for taxes, every town officer must be proved to be an officer *de jure*. *Payson* v. *Hall*, 30 Maine, 319; *Proprietors of Cardigan* v. *Page*, 6 N. H. 182; *Pike* v. *Hanson*, 9 N. H. 491.

2. The oath administered to the town clerk each year was not that required by law, and was insufficient.

The certificate of the moderator was insufficient. R. S., c. 3, §§ 14, 17.

3. A record must be made of the original and not of a copy. The same is true of the certificate of the oath administered to the town clerk.

4. It does not appear who administered the oath to the town officers in 1862. The word "attest" indicates a witnessing or an attestation of the record.

5. The inventories do not show that the lands taxed to defendant and sold for the taxes lie in the town of Peru. It does not appear that "Lunt's upper tract" or "lower tract" lie in the town of Peru. This should appear affirmatively. The assessors say that the lands are liable to be taxed in Peru. That is an opinion or conclusion of the assessors, and insufficient.

6. The inventory must contain a certain, plain, and accurate description of the land taxed. It is the foundation upon which all the subsequent proceedings rest. The assessment, the tax list, committed to the collector, the notice of sale, the returns and the deeds. An imperfect or erroneous description in the inventory runs through all the subsequent proceedings, and is fatal to them. An error or imperfection in the inventory is not cured by a correction or amendment in the after proceedings.

The description must be plain and accurate, so that the tax-payer may understand the premises taxed, and the purchaser at the sale may find them from the description. Blackwell on Tax Titles, 2d ed., 123 and following pages and cases cited; *Adams* v. *Larrabee*, 46 Maine, 516; *Lafferty's Lessee* v. *Byers*, 5 Hammond, 457.

7. To describe the land taxed as a part of a lot, without defining precisely what part, or as a piece of land or by other like description, without giving boundaries or other particular description, is insufficient. Blackwell on Tax Titles, 2d ed., 127–8–9 and cases cited; *Adams* v. *Larrabee*, 46 Maine, 516; *Stewart* v. *Ateer*, 5 Ohio, 257.

Taking the inventory of 1862, and the several parcels of real estate taxed to defendant, in the order in which they stand; of the first parcel there is no description whatever. The 3d, 5th, 7th, 8th, 9th, 10th, 11th, 14th, 15th, 17th, are described as parts or halves of lots or tracts and as pieces of land, without describing what half or part, or in any way describing the pieces so as to enable one to find them, while the description of the remaining parcels is exceedingly imperfect, uncertain, and defective. Same of the parcels including undefined parts of two lots. Were the ranges and lots taken from Lunt's place, or from a town plan? Precisely the same objections exist to the inventories of 1863. The description of some of the parcels may be somewhat changed or modified, but they are all equally imperfect, uncertain, and defective.

8. The assessment list, being a list of the taxes assessed upon the property described in the inventory, should and must perfectly and fully agree in its description of the parcels of real estate taxed with the inventory. Any material variation or disagreement is fatal. The R. S., c. 6, § 56, requires the assessors to make "perfect lists" of their assessment, and commit the same to the collector. To be a perfect list, the assessment should contain an accurate and plain description of each parcel of real estate taxed, and if it fail to do so, it is not such a list as is required by law. Blackwell on Tax Titles, 392 and following pages.

The assessment and tax list in each year, 1862–3–4, in the case at issue, are identical in form of description, and in each year they differ widely from the inventory of the same year, not merely in form but in substance. As to the first parcel of defendant's land, they agree with the inventory in not giving any description whatever. The remaining parcels are described in the assessment and

tax lists by range, lot, and acres alone, with the exception of the islands, and with the same exceptions they are described as whole lots, while the inventories describe them as parts and halves of lots and tracts, and as pieces of land. Can such lists be regarded as the " perfect lists " required by statute ? The original assessment should have been offered in evidence, and not the record. R. S., c. 6, § 157.

9. A record of the assessment and inventory is required by statute to be deposited in the assessors' office, if any, otherwise with the town clerk, before the taxes are committed to the collector.

This requirement is peremptory, and a compliance with it essential. It is for the benefit and protection of the tax-payer, that he may have the opportunity to examine them and ascertain what property is taxed to him, the rate, etc. It should appear affirmatively that the records were so deposited ; but in this case it does not so appear in either of the years in question. R. S., c. 6, § 59 ; *Brown* v. *Veazie,* 25 Maine, 359 ; Blackwell on Tax Titles, 2d ed., 117 and cases cited.

10. By the warrant to the collector in 1863, it appears that there is included in the taxes assessed upon the tax-payers of the whole town, a school tax not voted by the town, but by " school district No. 9 in said town," an assessment clearly unauthorized.

Supposing the tax to have been assessed upon the tax-payers of district No. 9 only,—a supposition we have no authority to make,— there is still an equally fatal objection to the warrant as presented. There is no evidence that defendant's lands taxed did not lie in said district, and probably some or all of them did lie there.

It should be in proof that the provisions of R. S., c. 11, § 39, were complied with, and the omission is fatal to the warrant. The doings of the school district in raising the money are not given. *Elwell* v. *Shaw,* 1 Maine, 339.

11. The warrant to the collector in 1864 shows that a deficient highway tax was included in the assessment, and assessed upon the tax-payers of the whole town instead of upon the delinquents.

There is no evidence that the highway surveyors gave the no-

tice to the delinquent tax-payers required by R. S., c. 18, § 42, or returned to the assessors the lists required by § 45 of the same chapter. *Patterson* v. *Creighton*, 42 Maine, 367 ; *Elwell* v. *Shaw*, 1 Maine, 339.

12. It should appear in proof, that prior to the notice of sale the collector made a demand on the defendant for the tax on the land advertised.

The tax should be collected from personal estate of the tax-payer, if he has any liable to be taken. The lien upon real estate of resident owners for the tax upon it is given as matter of security. The warrant don't mention it, and the real estate should be resorted to only when there is a want of personal estate.

Personal property cannot be taken without previous demand. Blackwell on Tax Titles, 172.

13. In giving notice of sale, the collector is required to give the "right lot and range, number of acres, and such other short description as is necessary to render it certain and plain." R. S., c. 6, § 150 ; *Ronkendorff* v. *Taylor*, 4 Pet. 349 ; Blackwell on Tax Titles, 223 and following pages ; *Lafferty's Lessee* v. *Byers*, 5 Hammond, 458.

In the notice of sale each year, the first parcel of defendant's land is described as " the stand where he resides." No such description, or anything equivalent to it, is found in the inventory or subsequent proceedings. By what authority did the collector insert it ?

As to the other parcels, there are the same errors, imperfections, and deficiencies in descriptions in the notices as in the assessments and tax lists. None of them are sufficiently described ; there are no " such other short description " as is required, nor is the "right " stated in any instance.

14. The certificate on the notice filed with the town clerk should state what notice was given by the collector. Blackwell on Tax Titles, 213.

15. The same objections as those made to the assessments, tax lists, and notices, may be made with equal force to the returns

made to the town treasurer and town clerk. *Andrews* v. *Senter,* 32 Maine, 394.

16. There is no evidence that defendant was notified of the sale as required by c. 6, § 151, R. S. The certificate of the collector to the town clerk is not evidence. It is no part of the doings in making the sale, and should have been proved *aliunde.* R. S., c. 6, § 159.

17. The sales for the taxes of 1864 was adjourned. Was it lawful? The return by collector to the town treasurer was not made within four days of the time notified for the sale, but was made within four days of the time to which the sale was adjourned, and the sale actually made. R. S., c. 6, § 143; Blackwell on Tax Titles, 275.

18. In the deeds all sorts of vagaries of description seem to have been indulged in by the collectors. The deeds of the different years in nearly every case differ from each other in description of the same parcels of land, and all differ essentially from the inventory of the same year, and find no support, except in rare instances, from the notices of sale.

The first series describe the parcels as lots, parts of lots, and parcels of land, and in this respect approximates the inventory; but in other respects there is little similarity to the inventory, and none to the notice of sale. The second series deals only in whole lots, and recognizes no parts or pieces. While the third series describes all the parcels as parts of lots save the islands.

In making the deeds, the collectors seem to have consulted each his own fancy without regard to any previous description. Tax deeds should be more certain and plain than in a conveyance.

It will be observed that "the stand where he resides" was deeded the first year only, and was not returned as sold the third year. The deeds should follow the notices and description. Blackwell on Tax Titles, 38-2-3 and 392; *Erwin* v. *Helm,* 13 Sargeant & Rawle, 151.

19. The writ does not follow either series of deeds in description of the premises demanded, but partakes something of all the de-

scription with some additions not found in either. The writ must follow the deed under which the demandant claims. · He can only recover by virtue of his deed.

20. The deeds were not given by the collectors in their official capacity and convey nothing.

DANFORTH, J. This is an action to recover possession of eighteen different parcels of land, claimed by virtue of a sale for taxes for the years 1862, 1863, and 1864. The proceedings in assessing the taxes and making the sales, are substantially alike in each year, and, therefore, it will be unnecessary to consider only those of the first.

Many objections have been raised to the election, qualification, and proceedings of the officers who made the assessments, as well as to the proceedings of the collector in making the sales. It is true that in these respects, as the plaintiff's title is founded solely upon the provisions of the statute, such provisions must be strictly complied with. Without considering each objection, it is difficult to say, that after a careful comparison of the proceedings of the town and its officers, with the several provisions of the statute, we find that the officers were duly elected and qualified, and that the certificate of the oath taken by them is sufficient and in conformity with the provisions of the R. S., c. 1, § 6. Nor do we find any defect in the assessment or in the proceedings of the collector in making the sales, certainly none not remedied by R. S., c. 6, § 98, unless it be in the description of the land taxed and sold. The indefinite description of the several parcels assessed is the only serious objection to the plaintiff's title. He will, then, be entitled to a judgment for such lots as are sufficiently described, while as to the others he must fail.

The R. S., c. 6, § 150 provides that, "for all taxes legally assessed on real estate belonging to resident proprietors . . . a lien is hereby created which shall continue in full force until the payment thereof." By the same section it is further provided that the collector may give notice " of his intention to sell so much of such

real estate . . . as is necessary to pay said tax and all charges." By § 152 of the same chapter it is enacted that, " when no person appears to discharge the taxes duly assessed on any real estate of resident owners, with costs . . . the collector shall proceed to sell at public auction, to the highest bidder, so much of such real estate as is necessary to pay the tax then due." The collector has no authority whatever for selling land of resident proprietors for taxes except as given in these statutes. He can sell such and only such as the law gives a lien upon, and the lien attaches to such and only such as are legally assessed, and to the specific and definite parcel upon which the tax is laid. If there is no definite parcel taxed, there can be no lien, and if no lien there can be no legal sale. Hence the inference is irresistible, that, in the assessment which establishes the lien, and which is the foundation on which rest all the subsequent proceedings, the lots taxed must be definitely and distinctly described. This view is confirmed, if confirmation were necessary, by the provision in § 150 in relation to the notice to be given by the collector, which is as follows, " designating the name of the owner, if known, the right, lot and range, the number of acres as near as may be, . . . and such other short description as is necessary to render it certain and plain." The collector must obtain his information from the assessment. He has no authority to add to or take from it ; nor can the assessors, after the completion of the tax, add to the description so as to make that certain which was before uncertain. The assessment must be complete in and of itself as much as a deed or contract. Parol proof may be resorted to for the purpose of applying the terms of the description to the face of the earth, but no further. It cannot supply any deficiency in the buts or bounds. These must be ascertained from what is written and from that alone. We may suppose, as contended in the argument, that the assessors intended to assess the lot or portions of the lot owned by the person taxed, or we may learn that fact from those officers themselves. But this is not a question of intention, but one of fact. What did they do ? What is the specific lot upon which the tax is made ? Until we can answer these

questions, and from the record, we are utterly unable to ascertain the lot to which the lien attaches and the one to be sold. Blackwell on Tax Titles, 392, 123–4.

Applying these principles to the case at bar, we find the description, in the assessment of many of the lots sold, defective and insufficient.

The first parcel claimed in the writ has no description whatever. The thirteenth, though sufficiently set out in the writ, in the assessment is described as one-half island; whether an undivided half does not appear, or if not undivided, no means are furnished by which we can ascertain which half is intended.

The third, fifth, sixth, seventh, eleventh, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth parcels declared for are described as parts of lots or parcels, or so many acres of a certain lot.

Such a description, however it may be in a deed, when the grantor makes his own bargain and can enter into such a contract as he pleases, is plainly insufficient in a tax title, where the lien is fixed by the assessment and nothing is left to the discretion or election of the collector or purchaser as to the location of the particular lot sold or the specific acres in the lot to which the sale shall attach. Under such a description the person assessed could not tell whether it was his property or that of a stranger which was taxed. Nor would the purchaser have sufficient knowledge of the identity of the land to enable him to bid intelligently. Blackwell on Tax Titles, 124 and cases cited; *Adams* v. *Larrabee*, 46 Maine, 516.

Therefore, as to these lots, the action must fail. But as to the remaining lots it is different. The second declared for is described somewhat differently in the writ and assessment, yet the description in each is definite, and the two have so much in common as to satisfactorily lead to the conclusion that both refer to the same tract.

The fourth piece is described as the Cyrus Keen place, in lot six, range two; the eighth as the whole of lot four, range three, Lunt's Lower Tract; the ninth as lot six, range three; the tenth as lot three, range three; and the twelfth as the Lang farm on the hill, being parts of lots one in the third and fourth ranges. These

lots are sufficiently described to enable any one to identify them by having the knowledge necessary to apply the description to the face of the earth.

The plaintiff must, therefore, have judgment for the second, fourth, eighth, ninth, tenth, and twelfth parcels demanded in his writ and described as above, and for the remainder,

*Judgment for defendant.*

APPLETON, C. J.; CUTTING, KENT, WALTON, and BARROWS, JJ., concurred.