RICHARD A. SEYMOUR, JR., AND FREDERICK SEYMOUR, V.
RICHARD G. PETERS.

*Taxes—Failure to extend upon original roll—Return of delinquent taxes—Neglect of treasurer to verify—Excessive levy— Assessment of non-resident lands—Trover.*

1. The failure of a supervisor to extend the taxes levied in his township upon the corrected assessment roll received from the board of supervisors after equalization is fatal to the validity of such taxes, and of tax deeds issued on sales for the non-payment thereof.

2. An excess of 45 cents in the highway tax assessed upon a parcel of land will render a tax deed issued on a sale for its non-payment void.

3. The failure of a town treasurer to verify his return of delinquent tax lands is fatal to tax sales founded on such return.

4. The requirement that all lands unoccupied, and not claimed to be owned by any resident of the township where situated, and not exempt from taxation, shall be entered upon a part of the roll separate from that upon which the estates of residents are entered, is *mandatory,* and tax titles based upon assessments *not so made* are invalid.

5. In trover a defendant may show title in a third person, a stranger to the action. *Ribble v. Lawrence,* 51 Mich. 569.

Error to Manistee. (Judkins, J.) Argued October 20, 1887. Decided October 27, 1887.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*A. J. Dovel,* for appellant.

*Ramsdell & Benedict* and *McAlvay & Grant,* for plaintiffs.

CHAMPLIN, J. The action in this case is trover for a quantity of pine saw-logs. The suit was commenced by declaration filed and served on the second day of February,

1886. The conversion of the logs is alleged to have occurred on the thirtieth day of January, 1886. The logs were cut by plaintiffs, marked with their mark, and deposited upon skidways near a railroad owned and operated by defendant, from whence they were to be transported by rail to Manistee lake. They were cut from the south-east quarter of the south-east quarter of section 5, in township 20 north, range 17 west.

Defendant, claiming to have bought the logs from one Carrie L. Munn, some time in January, 1886, took possession of the logs, and removed them in the night-time, cut out the plaintiffs' marks, and placed his own upon them.

The plaintiffs claimed ownership of the logs through tax titles from the State of Michigan, by Auditor General's deeds, for delinquent taxes for the years 1859 to 1864, both inclusive. The defendant attacked the validity of these tax titles for several reasons, which will be stated further on.

Counsel for the plaintiffs deny the right of the defendant to contest the validity of the plaintiffs' tax deeds, and they invoke the provisions of section 1166 of Howell's Statutes to support their position. This section of the statute was not enacted until 1869, and stood as section 164 of that act. That act was prospective, and the point raised was adjudicated in *Clark v. Hall*, 19 Mich. 373, and need not be further noticed.

Objection is made to the validity of the tax deeds for the reason that the corrected assessment rolls in the hands of the supervisors did not contain the taxes assessed against the several parcels of land in the township, and the assessment rolls and tax-lists placed in the hands of the treasurer for collection for the years 1859, 1861, and 1863 were not copies of the assessment rolls remaining in the hands of the supervisors.

It appears that the supervisor of the town of Freesoil, in which these lands were situated, did not in any of the years

mentioned extend the taxes upon his corrected assessment roll, except one year, and then only partially so, and in that case the taxes on the corrected roll did not agree with those upon the copy of the assessment roll and tax-list delivered to the township treasurer.

It is claimed by defendant's counsel that this is a fatal defect, and renders the levy and tax deeds void. On the other hand, plaintiffs' counsel contend that the law neither required nor contemplated that the supervisor should extend the taxes assessed by him upon the corrected assessment roll, but only that he should copy the assessments upon such roll as corrected, and extend the taxes upon such copy.

The question is an important one, for, if the defendant's position is correct, it disposes of the merits of the controversy, for the reason that the titles through which the plaintiffs claim would thereby be invalid, so far as it depends upon those years

It certainly has been the understanding of this Court that the taxes assessed must be extended upon the corrected assessment roll which the supervisor receives from the board of supervisors, and which the law requires shall remain in his office.

In *Ferton v. Feller*, 33 Mich. 203, Mr. Justice Graves, speaking for the Court, said:

" The roll first made by the supervisor is carried before the board, and after final correction there, and after its authentication by the chairman, it is delivered to the supervisor, who is required *to file it and keep it in his office.* Section 995, C. L. No other roll is brought to the attention of the board, and this alone receives the sanction of the board. With this before him, and the requisite certificates and statements in regard to the taxes to be levied, and their destination, the supervisor is required to proceed to assess 'according and in proportion to the individual and particular estimate and valuation specified in the assessment roll.' Section 999, C. L.

" He is next to make the collection roll, and this is required to be a copy of the corrected roll in his office. Section 1002, C. L. As this correspondence is indispensable in the first

instance, its continuance is equally indispensable. The symmetry of the proceedings, the consistency of the records, and the dependence of the collection roll upon the first roll and their legal connection, all alike require it. As the first is to remain in the supervisor's office as a public record or memorial, so the collection roll is to go ultimately to the county treasurer's office, to be kept for the same purpose. Section 1023, C. L. The entire theory of the system, and all the regulations, contemplate that these documents shall be and continue *substantially* alike, and in all essential particulars speak the same language when referred to. No lawful change can be made in the collection roll, unless warranted by the state of the roll having the sanction of the board of supervisors; and consequently the collection roll cannot legally be changed so as to be in *substantial* disagreement with the other."

Notwithstanding this decision, which is directly in point, counsel for plaintiffs insist that we have misconceived the intention of the Legislature, and the language of the law relative to the assessment and collection of taxes, and that it did not require the assessment of the taxes to be entered upon the original assessment roll. And they call attention to the language of the statute, which designates the copy to be delivered to the treasurer for collection as the "assessment roll and tax-list." Sections 818, 819, 821, Comp. Laws 1857. It is so designated in these sections, but that is merely to distinguish it from the corrected assessment roll, from which it is copied.

Section 815, Comp. Laws 1857, provides that—

"The supervisor of each township shall proceed to assess taxes for the amount specified in such certificate, together with a tax for the amount of money to be raised by his township, adding thereto, and to all other taxes required by law to be assessed by him, not more than four nor less than two per cent. for collection expenses, upon the taxable property in the township, according and in proportion to the individual and particular estimate and valuation as specified in the assessment roll of the township for the year."

The supervisor is required to assess, that is, to set, fix, or charge, a certain sum to each tax-payer in the proportion

named. Where shall he set these sums or enter these charges? Certainly not upon fugitive sheets of paper, nor in the copy of the assessment roll, for as yet the statute has said nothing of the copy of the corrected roll. That is made a subsequent duty by a succeeding section. The law has always required the supervisors to make their assessments upon blanks furnished by the Auditor General, and it is common knowledge that the blanks furnished, whereon to assess the property, do and always have contained the proper columns for extending the tax upon and against the original assessment. In arriving at the intention of the Legislature, the whole law must be taken and construed together. In so doing, it is beyond question that the Legislature intended that the taxes should be entered upon the original assessment roll. This is apparent from section 830, which reads as follows:

"The production of any assessment roll, on the trial of any action brought for the recovery of a tax therein assessed, may, upon proof that it is the original assessment roll, or the assessment roll with the warrant annexed, of the township named as the plaintiff in such action, to be read or used in evidence; and if it shall appear from said assessment roll that there is a tax therein assessed against the defendant in such suit, it shall be *prima facie* evidence of the legality and regularity of the assessment of the same," etc.

It thus appears that the Legislature intended that the tax should be entered upon the original roll, and that the roll to which the warrant is annexed should be a copy thereof, and either should be *prima facie* evidence of the tax therein assessed.

This provision relative to the correspondence of the original and copy of the assessment rolls is enacted for the benefit and protection of the tax-payer, as well as for the protection of the public. It was designed to protect the tax-payer against unauthorized meddling with the amount of taxes assessed against him, after the roll has passed from the hands

of the supervisor, as was the case of *Ferton v. Feller*. It is also designed to protect the township against the loss or destruction of the collection roll, and to afford means for the collection of the taxes assessed. It was not, therefore, a mere irregularity in the procedure, but a fundamental requirement, which cannot be dispensed with, and the omission to observe this requirement invalidated the tax deeds founded upon the taxes extended upon the collection roll.

The counsel for defendant also claimed that the highway tax for 1860 was excessive. He introduced the records of the meeting of the commissioners of highways held in May, by which it appears that they voted to levy a tax of one mill on the dollar upon the valuation of the real and personal property in the town for highway purposes. He also introduced the records of the township board, to show that no highway tax was voted by the township board.

By the statute, the valuations upon which the commissioners are authorized to assess for highway purposes are those appearing upon the assessment roll of the preceding year. This valuation of the parcel in question was $50. The one-mill tax authorized to be assessed would be five cents. It was assessed upon the roll for highway tax for 1860, at $1. The law would authorize an assessment for highway labor of $1 on each $100 of valuation, and this would authorize an assessment against this land of 50 cents, making a total of 55 cents. The excess rendered the tax void.

For the year 1862, the return of delinquent taxes was not subscribed nor sworn to by the township treasurer. The tax title for this year was invalid for that reason.

The bill of exceptions contains a statement that—

"The non-resident lands were not assessed in a separate part of the roll from the resident lands in any of the foregoing assessment or tax-rolls for any of the years."

The law required that "all lands unoccupied, and not claimed to be owned by any resident of the township where they

are situated, and not exempt from taxation," should be "entered on a part of the roll separate from that upon which the estates of residents are entered." This Court had held this provision mandatory, and that, when it was disregarded, the title based upon assessments so made is invalid. *Hanscom v. Hinman*, 30 Mich. 419; *Rayner v. Lee*, 20 Id. 384.

Defendant offered to show title to the logs in a third person, a stranger to the action. Plaintiffs contend that this is not permissible in an action of trover. The law has been settled otherwise in this State. Such testimony was admissible. *Ribble v. Lawrence*, 51 Mich. 569, and cases cited.

Other objections are urged against the validity of the tax deeds introduced by plaintiffs in evidence, but it is unnecessary to examine them, as those pointed out are sufficient to show that the circuit judge erred when he instructed the jury that the tax deeds were valid.

The judgment must be reversed, and a new trial ordered.

SHERWOOD and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.