| 10 | 492 |
| 11 | 23 |
| 10 | 492 |
| 15 | 416 |
| 15 | 417 |
| 15 | 419 |
| 10 | 492 |
| 23 | 600 |
| 23 | 601 |
| 10 | 492 |
| 24 | 247 |
| 10 | 492 |
| 27 | 438 |
| 10 | 492 |
| 28 | 7 |

# JENS OLSEN, Respondent, v. HYRUM BAGLEY, Appellant.

1. Tax Sale.—Description of Land.—Where land is assessed as W.'s 80 acres on the N. W. ¼ of section 23, township 2 S., range 1 E., the sale thereof for taxes is void under 2 Comp. Laws 1888, § 2013, which provides that in assessing real estate it shall be referred to with reasonable certainty as to locality and quantity.

2. Id.—Notice.—Under 1 Comp. Laws 1888, § 2030, requiring the collector to furnish to each tax payer "a notice of the amount of tax assessed against him and where and when payable," and before making a sale to give the "owner if known and an inhabitant of the county, a notice in writing of the time and place of sale." Failure to give such notices invalidates the sale.

3. Id.—Recitals in Tax Deed.—Description in Assessment Roll Governs.—1 Comp. Laws 1888, § 2034, provides a tax "deed shall recite * * * the amount of the tax, * * * the amount for which the real estate was sold, a full description thereof." A tax deed which calls for 80 acres, while the levy, assessment, sale and certificate of sale covered 120 acres, is void as the land described in the deed is not in fact the property that was advertised and sold, and differs from that described in the assessment roll.

4. Id.—Excessive Charges.—A charge by a tax collector of $6.60 for the certificate of sale of land, this being included in the amount for which the sale is made invalidates the sale when he is authorized to charge only 25 cents per folio, as such certificate would not contain over four folios at most.

(No. 488. Decided July 27, 1894. 37 P. R. 739.)

Appeal from the District Court of the Third Judicial District, Hon. Charles S. Zane, *Judge*.

Action by Jens Olsen against Hyrum Bagley to set aside a tax sale and to remove a cloud from certain real

estate.   From a judgment for plaintiff, defendant appeals.
*Affirmed.*

*Messrs. Rawlins & Critchlow,* for appellant.

*Mr. James H. Moyle* and *Mr. Clesson S. Kinney,* for
respondent.

MINER, J.:

The plaintiff brings this action to quiet title to the S.
½ of the N. W. ¼ of section 23, township 2 S., of range
1 E., Salt Lake meridian, containing 80 acres of land, and
claims to be the owner thereof.   The defendant, Bagley,
claims title in himself by virtue of a tax deed to the pro-
bate judge, for the benefit of the county, for taxes of
1883; that the county sold the land to one Bamberger,
and that Bamberger sold it to the defendant.   Under this
deed, Bagley claims to own the title to the land.   The
defendant sets up all the proceedings under which the sale
was made.   The regularity and legality of these proceed-
ings are attacked by the plaintiff.   In this case the tax
and costs amount to $14.65.   The property sold is valued
at between two and three thousand dollars.   The laws of this
territory allow 18 per cent. interest on the investment.   This
is certainly a large demand on an investment of so small a
sum, to insist upon the title to property worth more than
$2,000.   But the purchaser at tax sale relies upon the
letter of his bond, and he has a legal right to do so.   But
under such circumstances he must rest alone on its letter.
He has no overpowering equity to justify a large and
liberal interpretation of statutory proceedings in his favor.

Edward Woods owned the land in 1883.   In that year
the assessor assessed to Edward Woods 80 acres of land on
the N. W. ¼ of section 23, in township 2 S., range 1 E.,
at $150,—that being the only assessment made against

him,—and no other designation or description of the location of the land was given in the assessment roll, or in the duplicate thereof. In order to collect the taxes the collector levied upon and gave notice of sale of the S. ½, and the N. W. ¼ of the N. W. ¼ of section 23, township 2 S., range 1 W., containing 120 acres of land, or so much as was necessary thereof to pay $1.80 taxes, and expense of levy and sale, amounting to $12.85. That on the day named for the sale the collector offered the said property for sale. There being no bids, it was struck off to the probate judge for said taxes and costs. A certificate of sale of said land last described was delivered to the purchaser. After this a deed was executed to the probate judge upon said certificate of sale, describing the land sold as the S. ½ of the N. W. ¼ of section 23, but making no reference to the N. W. ¼ of the N. W. ¼ of section 23. The 80-acre piece was subsequently sold by the county to Bamberger, and by Bamberger to the defendant.

Section 2013, Comp. Laws 1888, provides that "in assessing real estate it shall be referred to with reasonable certainty as to locality and quantity." The assessor did not identify the land attempted to be assessed with reasonable certainty. From the assessment, neither the purchaser nor the owner would know whether the land assessed was located on the east, west, north or south side, or in the middle of the section; and there is no possibility of locating the exact 80 acres that was attempted to be assessed, so far as it appears from the assessment roll or the notice of sale. The assessment was void for uncertainty. Blackw. Tax Titles, §§ 223–241, inclusive; Black, Tax Titles, § 112; *Lyon Co.* v. *Goddard*, 22 Kan. 389; *Marx* v. *Hanthorn*, 148 U. S. 172, 13 Sup. Ct. 508. If there was no definite parcel of land assessed there was no lien, and if there was no lien there could be no legal sale. In the case of *Treon* v. *Emerick*, 6 Ohio, 391, the land was described

as "sixty acres, part of the north half of Sec. 13, town 3, range 4 west." The description was held uncertain, and the sale void. In *Stewart* v. *Aten*, 5 Ohio St. 257, the description in the duplicate roll, "150 acres, part of Sec. 36, N. W. corner," was held defective, unless the 150 acres was situated in the northwest corner of the section, and in a square form. A sale of a rectangular piece in the corner, under such description, was held void. In *Head* v. *James*, 13 Wis. 641, the description, "North and west part of S. E. ¼, Sec. 4, T. 4, R. 12, 50 acres," in the assessment and sale, was held void. *Greene* v. *Lunt*, 58 Me. 518; *Perkins* v. *Dibble*, 10 Ohio, 433.

Tax sales are made exclusively under statutory power, and, unless all the necessary prerequisites of the statute are carried out, the tax sale becomes invalid. If one of the prerequisites fail, it is as fatal as if all failed. The power vested in a public officer to sell land for the non-payment of taxes is a naked power, not coupled with an interest, and every prerequisite to the exercise of the power must precede its exercise. The title to be acquired under statutes authorizing the sale of land for the non-payment of taxes is regarded as *stricti juris*, and whoever sets up a tax title must show that all the requirements of the law have been complied with. Cooley, Tax'n, §§ 470, 471; Black, Tax Titles, §§ 154, 184; *Marx* v. *Hanthorn*, 148 U. S. 172, 13 Sup. Ct. 508; Blackw. Tax Titles, §§ 121, 126; *Seymour* v. *Peters*, 67 Mich. 415, 35 N. W. 62; *Houghton Co.* v. *Auditor General*, 41 Mich. 28, 1 N. W. 890.

According to the findings, Edward Woods was a resident of the county all the time during the years 1883 and 1884, and his residence was known to the collector. Section 2030, Comp. Laws 1888, requires "that the collector shall furnish to each tax payer, or leave at his residence or usual place of business if known, a notice of the amount

of taxes assessed against him and when and where payable, and before making sale, the collector shall give the owner, if known, and an inhabitant of the county, a notice in writing of the time and place of sale." This provision of the statute seems to have been wholly overlooked. The record shows that no notice of the amount of Woods' taxes, or when and where they were payable, was ever furnished to Woods, and also shows that no notice in writing was ever given to said Woods of the time and place of sale, as required by the statute then in force. The certificate of sale is silent upon this subject. The giving of these notices in form and as prescribed by the statute is an essential jurisdictional fact. The omission to give the notice is not a mere irregularity, but a vital defect. Black, Tax Titles, § 205. Woods only owned the 80 acres. The levy, assessment, sale, and certificate of sale covered 120 acres. The 40-acre tract was struck out of the deed by the clerk before its delivery. The property covered by the deed was not in fact the property that was advertised and sold.

In *Stout* v. *Mastin*, 139 U. S. 151, 11 Sup. Ct. 519, Mr. Justice Brewer holds that, if the description in a deed of land sold for nonpayment of taxes departs from the description contained in the assessment roll and the prior tax proceedings, such prior description, if imperfect and insufficient, avoids the deed, although the description in the deed may be sufficient and complete. The deed must not only conform to the requirements of the statute, but must conform to the proceedings upon which it is based, in all essential particulars. The purchaser is entitled to a deed wherein the description corresponds to the certificate issued. In this case the description of the property in the certificate of sale did not correspond with that of the assessment roll, nor did the description in the deed correspond with the certificate of sale. The recitals in

the deed were therefore false, because they did not give a full description of the land sold, as required by section 2034, Comp. Laws 1888. The collector sold 120 acres under an imperfect description, and conveyed by deed only 80 acres, which was not correctly described in the assessment roll. This avoids the sale. *Jones* v. *Dils*, 18 W. Va. 759; 2 Derby, Tax'n, § 144; Black, Tax Titles, §§ 112, 405; *Blair* v. *Scott*, 44 Iowa, 143.

Section 2030, Comp. Laws 1888, provides that the collector shall be entitled, as costs, to the same fees as are allowed sheriffs or constables for like services. In this instance the tax was $1.80.

| | |
|---|---:|
| The collector charges for the levy | $2 00 |
| Advertising | 1 00 |
| Mileage | 2 20 |
| Percentage | 05 |
| Certificate of sale | 6 60 |
| Filing certificate | 50 |
| Copying notice | 50 |
| Total fees | $12 85 |

In order to collect $1.80, the collector makes a charge of $12.85, yet he is entitled to such fees only as are allowed to sheriffs for like services. He charges $6.60 for the certificate of sale. It is difficult to find any statute authorizing this charge. If such a statute existed at the time of the sale, it has not been pointed out. If it be claimed that the collector should be allowed 25 cents per folio for the certificate, under section 5443, then it would be necessary that a showing be made that the certificate of sale contained over 26 folios. It does not appear from the record how many folios were contained in this certificate of sale. The statute requires these certificates to recite substantially the fact of nonpayment of the tax, the levy upon, advertisement, and sale of the real estate. It would not be possible or reasonable to draw out this certificate to

the length of 26 folios.  If the collector has the discretionary power to lengthen out the certificate so as to contain 26 folios which are wholly unnecessary, and charge 25 cents per folio therefor to the county, then he can as well increase the length of the certificate to 100 folios or more, and recover compensation from the county or from the delinquent as well.  It seems perfectly clear that the certificate of sale should not have contained over three or four folios at most, and that the charge of $6.60 for this certificate is extortionate, and that all of such charge in excess of $2 is wholly illegal.  The charge of 50 cents for copying notice is also illegal.  This sum increased the amount of the tax $5.10 in excess of what it should have been, and is an additional reason for holding the sale invalid.

In *Harper* v. *Rowe*, 53 Cal. 233, where a like question was involved, the court said:  " The plaintiff attacks the sale on the ground that one of the items for which the land was sold for taxes was the sum of 75 cents for filing and recording the duplicate certificate of sale filed in the recorder's office, which the court below held to have been improperly collected, and it therefore adjudged that, as the sale was for a sum in excess of that authorized by law, the certificate of sale was inoperative to vest any title or interest in the purchaser.  We agree with the court below that this item was illegally collected, and that the sale was, for that reason, void."  Many authorities hold, and it seems to be the settled law, that if any sum of money, in excess of the tax and legal costs, enter into the consideration for which the property is sold for taxes, this fact poisons and makes void the whole proceeding, and renders the sale void to the purchaser.  *Treadwell* v. *Patterson*, 51 Cal. 637; *Axtel* v. *Gerlach*, 67 Cal. 483, 8 Pac. 34; Cooley, Tax'n, § 497, pp. 344, 551; *Seymour* v. *Peters*, 67 Mich. 415, 35 N. W. 62; *Fox* v. *Cross*, 39 Kan.

350, 18 Pac. 300; Black, Tax Titles, §§ 381, 453, 465; *Houghton Co.* v. *Auditor General,* 41 Mich. 28, 1 N. W. 890; *Mammoth Min. Co.* v. *Juab Co., ante,* 232, 37 Pac. 348.

From the findings of fact the conclusion of the court below cannot be adjudged erroneous, and therefore its judgment for the plaintiff must be affirmed, with costs.

BARTCH J., concurs. MERRITT, C. J., and SMITH, J., concur in the result, on the point that the property was misdescribed, and that the proper notice was not given.