Lessee of SARAH WISTER *against* JOHN KAMMERER.

To vest a title in lands sold for non-payment of taxes, an exact and punctual adherence to the laws is necessary. It must appear that they were regularly advertised.
The act of 26th March 1785, does-not respect sheriffs' deeds under commissioners' sales.

EJECTMENT for 90 acres of land in Bethlehem township, in Northampton county. The suit was tried at Easton, before Shippen and Bradford, Justices, on the 24th September 1793, and a verdict passed for the defendant.

A rule was obtained to show cause why a new trial should not be granted.

Shippen, J. now reported the evidence on the trial:

A patent had issued to Casper Wistar for the lands in question, under whom the lessor of the plaintiff derived her title. On the 16th July 1781, and 10th October 1781, the commissioners of the county published general advertisements, that lands which had taxes due on them would be sold. On the 21st, August 1782, they issued a precept to Robert Trial, Esq., then sheriff of the county, to sell certain specified tracts of land, (of which the tract in dispute was one,) enumerating the respective sums due thereon, for the state taxes of 1781 and 1782. On the 26th August 1782, the conditions of the sale, by way of public vendue, were published, and the premises were struck off to Conrad Ihrie for 152*l*. 10*s*., and on the 26th December 1783, Robert Trial, the sheriff, conveyed the same to him for that sum, and Ihrie afterwards conveyed to the defendant, in consideration of 440*l*.

One witness swore, that he thought the sale unfair, the premises having been struck off too early, but other witnesses swore to the contrary.

It was admitted, that the defendant, and Ihrie under whom he claimed, had been in possession since the sale in 1782.

Five objects were made at the trial, to the defendant's title: 1st, That it did not appear the oath or affirmation of the commissioners has been signed by them, certified by the justices, or filed by the clerk of the session. 2d, The lands were not advertised by the commissioners,for at least three months in some of the English and German newspapers, previous to the sale. 3d, No money appeared to have been paid by the purchaser; but to this it was answered, that the Ihrie being the treasurer of the county at the time, he was chargeable therewith, and the money must be considered as in the county treasury. 4th, The sum assessed for taxes on the premises was only 87*l.* but lands were sold to the amount of 152*l.* 10*s.* 5th, The sale was said to be unfair, and conducted with unbecoming precipitation.

No other evidence was given of the commissioner's advertisements, except as is before specified, and on this ground the court gave a charge in favor of the plaintiff, but the jury found for the defendant.

Mr. Thomas for defendant insisted that if there had been negligence on the part of the commissioners in not duly publishing their advertisements, the lessor of the plaintiff had also been grossly negligent in not bringing her ejectment earlier. She had delayed her suit above eight years until the lands had greatly risen in value, and many improvements had been made thereon. The defendant was to be considered as a *bona fide* purchaser without notice. The law would presume in favor of the defendant's possession, from the advertisements shown in evidence, that the proceedings of the commissioners had been regular, and that they had published the advertisements acquired by the acts, authorizing such sales, though the same would not be approved at the trial. On a sheriff's deed, where possession has gone therewith more than twenty years, it is unnecessary to produce the record recited therein. Dall. 94. The acts of assembly of the 27th November 1755, 3d April 1779, and 27th March 1782, (2 Dall. St. Laws 14,) severally contain strong clauses, that the titles of the purchasers under commissioners' sale, shall be most absolute and available in law against the delinquents. The words of the 7th section of the act of 26th March 1785, (2 Dall. St. Laws 283,) are very general, and will embrace the present case. Sheriff's deeds shall not be avoided or prejudiced for want of proof that due and legal notice of the sales was given, where quiet and peaceable possession hath been had of the lands for the space of six years. If the defendant is not fully within the words, it is contended, that he is clearly within the equity of that act.

Mr Ingersoll for the plaintiff, observed,

1. The verdict is against law, evidence, and the charge of the court.

2. The proceedings were not conducted according to law.

3. The defect in the sale has not been cured by any subsequent act of assembly.

Where a special authority is delegated by law to particular persons, to take away a man's property and estate against his will, there it must be strictly pursued, and must appear to have been so pursued. Cowp. 29. In all actions brought, in which a bankruptcy comes in question, it is necessary to go through all the steps before entered into by the commissioners; that is, to prove, 1st that the party was a trader; 2d, the act of bankruptcy; 3d, the petitioning creditor's debt; 4th, the issuing of the commission; 5th, the assignment; and 6th, a property in the bankrupt. Espin. 545, (2d ed.) Dall. 383.

On the same obvious ground, when a sale of lands for taxes comes in question, all the pre-requisites pointed out by the laws, must be clearly shown. 1. The oath or affirmation of the commissioners must be filed with the clerk of the sessions. 2. The tax must be due. 3. Advertisements in the newspapers must be published at least three months before the sale. 4. The sale must be fair; and 5, The conveyance regular.

Waving three of the exceptions taken at the trial against the defendant's title, two of them recur with much force, and can admit of no satisfactory answer.

The qualification of the commissioners has not heen filed in the proper office, as prescribed by the act of 20th March 1724-5. (Prov. Laws 131.) On this ground, a sale by commissioners for taxes was invalidated at Carlisle (Nisi Prius, May 1783) in an ejectment commenced by William Moore and William Cochran, and the resolution has been acquiesced under since that period.

But a more striking objection presents itself, viz: the defect of regular advertisements for at least three months by the commissioners, that the lands would be sold for the payment of taxes. This was intended by the legislature as a guard against improvident sales, and to give full notice to landholders at a distance, of the assessments laid on their lands. The law of 27th November 1755, provides for the sale of unimproved lands for taxes, and directs that public notice should be given in the Pennsylvania Gazette for at least three months, of the intended sale. The law of 3d April 1779, § 26, (Bailey's ed. 206) makes the same provision, both as to English and German papers, in the midst of the war, when the necessity of raising money for

the public defence was self-evident.   And the law of 27th March 1782, § 30, (2 Dall. St. Laws 14) continues the same restriction on the sale of lands for  taxes.   To the  provisions of one or other of these three laws, all the intermediate acts of assembly until the 16th March 1785, have a reference on this subject.  The law of 16th March 1785, § 46, restricts the advertisements in one of  the English and one of the German newspapers to two months before the day of sale ; and this last act of assembly, so far as it  respects the levying and  collecting of the yearly taxes, was repealed with certain exceptions, by a law passed 9th April 1791.  3 Dall. St. Laws 65.  It cannot then be said that the commissioners of Northampton county have pursued the special jurisdiction given to them.  If they had regularly advertised the lands in  question, for non-payment of  taxes, there  would be no difficulty in procuring the proper evidence.   It is well known, that the several printers  preserve their  files of  advertisements, and the defendant's consciousness of the impropriety of the commissioners' conduct, must have induced his omission of applying to this source of information.   There is no room left for presumption.    If regular advertisements were ever published, they are still in existence, and can be procured at a small expense.  The jury were interdicted by law from presuming the publication of the proper and necessary advertisements.   The face rested in and  was capable of full proof, however distant from the supposed periods of the transaction.   Mere length of time, short of the period fixed by the statute of limitations, and  unaccompanied with any circumstances, is not of itself a sufficient ground for a jury to  presume a release or extinguishment of a quit rent.   Cowp. 214.   The case cited from Dall. 14, is not applicable.  When a judgment is obtained against a person, he has full notice of  the lien thus had against his lands. He has it in his power, and is bound to watch all the subsequent steps taken by the adverse party.  If an irregular sale of his real estate should take place, he can  resort to the court whence the process issued, for relief against the sale ; and he  is not prevented by the act of 26th March 1785, from having his remedy, within six years after the purchaser has got into peaceable possession by ejectment.   The case of one whose lands have been sold for taxes is *toto cœlo* different, where due and regular notice has not been given. He is unconscious of the measures pursued in his absence, and ignorant of what is doing ; he has no  tribunal to apply  to for redress, except the constituted courts of justice of the country.

The bare reading of the law of 26th March 1785, will satisfy any reasonable mind, that the sales therein contemplated by the

legislature and meant to be secured, were those which had taken place in the ordinary courts, and by their authority.

By the court. It has been truly said, that where the law gives a special jurisdiction to any body of men, it must be strictly pursued. Courts of justice are bound to watch their conduct narrowly and investigate it minutely. The peace of society and the security of property are intimately connected with and depend on such inquiries. Can any man be safe in the tenure of his lands, if they are liable, at the will and pleasure of county commissioners, to be sold through partiality or caprice, without treading in the path of their duty as sworn public officers? An exact and punctual adherence to the laws can alone divest the title of lands, on a sale for non-payment of taxes. The regular advertisements of the commissioners must be fully and clearly proved. The law makes it an indispensable preliminary; and agreeably hereto, was the decision of Shippen and Smith Justices, at Sunbury, May assizes, 1795, in the case of the lessee of Abraham East v. Edward Grimes. On this ground merely, without taking notice of the other exception, the rule for a new trial must be made absolute.

It is very clear, that the act of assembly of 26th March 1785, does not respect the deeds executed by sheriffs under commissioners' sales for taxes. The distant holders of lands stand in a very different situation from parties impleaded in court, as has been correctly stated by the plaintiff's counsel. " The want of any writ of *fieri facias, levari facias*, or *venditioni exponas*, or any returns thereupon, shall not defeat, avoid or prejudice any sheriff's deeds." The enumeration of these particulars, which are technical appropriate terms of the ordinary process of a court of justice, shows the sense of the makers of the law, and that the sheriff's sales intended to be thus guarded and protected, were confined to those made by the proper officers in the execution of the judicial process of a tribunal of justice. As the deed of the defendant is not within the letter of the act, neither is it in our apprehension, within the spirit or equity of it.

Rule for new trial made absolute.

A case was afterwards made for the opinion of the court, stating the preceeding facts which appeared on the trial; and in March term 1799, judgment was given by the whole court for the plaintiff, Mr. Sitgreaves for the plaintiff, declining to argue the case.