J. W. ALLEN, Respondent, v. J. W. W. FITZGERALD, Appellant.

EJECTMENT—TAX TITLE — DEFENSES — ESTOPPEL — EVIDENCE — SUFFICIENCY.

1. By agreement with the owner of realty sold for taxes, defendant was to purchase the tax title, taking the deed in his own name, which he was to retain on the owner's failure to pay half the expenses of obtaining it. It was not understood that such owner was to convey his present interest in the land. Such owner, failing to pay his portion of the expenses, conveyed the land to plaintiff, who sued defendant for possession. The tax sale was void. *Held,* that, as the conveyance to plaintiff vested title in him subject to defendant's rights under the tax deed, and as the latter deed failed to convey title, plaintiff was entitled to the land.

2. Defendant claimed title only under the tax deed, and did not rely on a conveyance from the owner. Such improvements as were placed on the land were not induced because of any agreement or representation from such owner or reliance on his conveying the land. *Held,* that plaintiff, as the grantee of such owner, was not estopped from asserting title to the land.

Decided June 22, 1901.

Appeal from District Court, Salt Lake County.—*Hon. H. H. Rolapp,* Judge.

Action by John W. Allen against J. W. W. Fitzgerald. From a decree in favor of plaintiff, defendant appeals.

AFFIRMED.

This action was brought to recover possession of thirty acres of land, and for the rents and profits thereof. There is some conflict in the testimony, but, taken together, it tends

to show, and the court found, in substance, that one Joseph
E. Day was the owner and in possession of the land in question
in 1892, subject to a mortgage of $1,000 by his grantor.
Since 1892, the value of the land was $700 to $800.    In 1892
the land was assessed by the assessor of Salt Lake county to
Richard Ballantyne, as follows:    "30.38 acres, southeast quar-
ter section 31, township 3 south, range 1 east; value, $750."
It was thereafter sold on such assessment by the county to
Edward Martin for $21.13, the taxes for that year.    It was
subsequently sold to the county for taxes in 1893 and 1894.
It was thereafter agreed between Day and the defendant that
the defendant should procure a tax deed from Martin for said
land, and an assignment of the tax certificate, by which the
defendant should procure a deed in his name from the county,
and redeem the tax sales of 1893 and 1894; that to raise the
money for this purpose it was agreed they should jointly exe-
cute a note to the bank for about $75, due in ninety days, with
which to pay for and procure such conveyances; and that Day
should pay one-half of the note at maturity, when defendant
should convey to him one-half of said land, but if he failed to
make such payment, then the defendant should retain such
title to the land.    The money, certificates, and deeds were
obtained as agreed in March, 1895.    At maturity of the note,
Day made default, and never paid his share of it, and de-
fendant paid the whole thereof.    The purpose of obtaining
said tax deeds and certificates and in taking the conveyance to
defendant was to cut off and evade the payment of the $1,000
mortgage held by Mrs. Critchlow.    Thereafter the defendant
used said land as a pasture in conjunction with Day until July,
1895, when Day left the state, and defendant remained in
possession of the land, and improved it to the extent of $75,
during the year 1898.    On the seventeenth day of May, 1898,
Day and wife, for a consideration of $600, conveyed the land
to the plaintiff by warranty deed, who, in July following,

demanded possession thereof from the defendant. The use of the land was $40 per year. 'Defendant had never asked for a conveyance from Day, but Day asked defendant for a conveyance to a purchaser he had procured, and claimed that defendant was to pay him $300 for half of the land, in addition to one-half of the expenses incurred in procuring the tax title, while the defendant claimed he was to have all of the land unless Day paid one-half of the note. The court found the issues in favor of the plaintiff, and decreed that the plaintiff was the owner and entitled to the possession of the land, and was also entitled to the rents and profits thereof from March, 1895, at $40 per year, with interest. The court also decreed that the defendant was entitled to be reimbursed for the money he had paid out to obtain such tax title, for $75 for improvements, and for taxes paid, with interest, together with a lien on the real estate for such amount in excess of the rents. From this decree the defendant appeals, and, among other things, alleges that the court erred in holding that the plaintiff was the owner of the real estate, and was entitled to the rents, and in finding that the purpose of the parties was to cut off the mortgage, and also in finding that the intention was that defendant should obtain title through the tax deed.

*Messrs. Arthur Brown* and *Smith & Putnam* for appellant.

*Messrs. Bennett, Howat, Sutherland & Van Cott* for respondent.

MINER, C. J. (after stating the facts). Upon an examination of the record we find that the evidence is sufficient to support the findings and decree. It is clear from the whole testimony that defendant and Day agreed to buy up the tax title, and take the deed in the name of the defendant, in order

to more effectually lull Mrs. Critchlow into inactivity and delay in foreclosing her mortgage until after the statute of limitations should run against it, and also by means of the tax deed cut off her mortgage on the land. Each party was to pay one-half of the expense of obtaining the tax deed and certificate of sale, and if thereafter Day failed to pay his proportionate share of the $75 note given to obtain the money with which to purchase such title within ninety days, then the title so acquired was to remain in the defendant. No agreement was made by Day by which he was to convey his present interest in the land to the defendant. Day failed to pay, and, as a consequence, defendant held what he acquired by means of the tax deed, and no more. He relied upon the tax deed for his title, and claimed ownership under it, irrespective of Day's title, and the mortgagee was frightened away from a foreclosure, or at least failed to foreclose. On the seventeenth day of May, Day and wife conveyed the land by warranty deed to the plaintiff in consideration of $600, and assigned to him the profits thereof. This conveyance vested the title in the plaintiff, subject to whatever rights the defendant had under the tax deed. The assessment and notice of sale under which the defendant claims reads as follows: "Owner: Richard Ballantyne. Place of residence: Draper. Real estate: 30.38 acres, southeast quarter, section 31, township 3 south, range 1 east. Value of real estate: $750."

1. The description in the notice of assessment and sale was inaccurate, uncertain, and indefinite, and rendered the sale void, as properly held by this court in Eastman v. Gurry, 15 Utah, 110, 49 Pac. 310, and Olsen v. Bagley, 10 Utah, 492, 37 Pac. 739. There was no agreement or promise that defendant should receive a deed from Day. Nothing more was to be done by Day except pay one-half of the note. There is no occasion for the application of the doctrine of specific performance, because there is no promise unperformed. Day's

failure to pay one-half of the note vested all his rights under the tax deed in the defendant. The parties were joined togethed in a questionable enterprise to defeat an honest claim of Mrs. Critchlow under her mortgage; and, while they may have misunderstood the effect of what they did and agreed to do, there is nothing left unfinished which a court of equity could order done to advance the interests of the defendant. As the case stands, the tax deed failed to convey title or create a lien on the land in the defendant. Stoddard v. Hart, 23 N. Y. 556-561; Oslen v. Bagley, supra.

2. The appellant claims that the plaintiff is estopped from asserting title to the land he obtained from Day. This is claimed under the general rule that an obligation created by an estoppel by deeds binds the grantor and his privies in estate, in blood, and in law. The term "privity," in this connection, denotes mutual or successive relationship to the same rights of property. 11 Am. and Eng. Enc. Law, 394. The estoppel claimed was not pleaded in the answer as a distinctive defense, but certain facts were alleged upon which the appellant bases his claim to an equitable estoppel. Assuming that an estoppel was properly pleaded, we are of the opinion that the facts shown do not bring this defense within the general rule above stated. No fraud, misrepresentation, or concealment is shown upon the part of Day; yet to create an estoppel the representations must be shown to be false, and that they were relied upon as true. The only fraud attempted, so far as the record shows, was upon the part of both Day and the defendant to defraud Mrs. Critchlow, an innocent party, out of her mortgage security. The tax title to be purchased was not the property of Day. What there was of it belonged to a stranger, and was derived from the state. They bought the title, but Day made no agreement to make the tax title good; nor did he become obligated to convey his title to the defendant on his failure to pay one-half of the note, or to give Day

any other lien upon the land. The defendant was to take the tax title in his name. It was supposed that the tax deed would convey title, and cut off the mortgage; and Day thought he could raise his one-half of the note in ninety days, and, if he did, he was to have one-half of the land—that is, he was to have one-half of the land as conveyed by the tax deed to the defendant back. Day made no agreement to convey his present interest in the land. All the parties were dealing in was the tax title. A proper and equitable construction of this agreement is that Day was to have half of the interest conveyed by the tax title if he paid half of the note; if not, the interest conveyed by the tax title was to remain in the defendant. It is true that Day testified that, if the defendant furnished the money to purchase the tax title, he would let him have one-half of the land, the defendant to bear one-half of the expense of procuring the title, and to pay $300 besides. The defendant claims under a different agreement. Testimony to establish a parol contract to convey real estate should be as clear, unambiguous, and certain as that necessary to constitute a deed which is absolute on its face a mortgage. Ewing v. Keith, 16 Utah 312, 52 Pac. 4; Story, Eq. Jur., sec. 769. The defendant claims that he made improvements with Day's knowledge and consent, and that plaintiff purchased with notice of such improvements and claim. No facts are found by the trial court to justify this contention. It does not appear that improvements were placed on the property with the consent of Day, or in reliance upon a conveyance of Day's title. Defendant took the tax title in March, 1895, and both he and Day jointly occupied the land until August of that year, and then Day left. In finding No. 12, to which no exception appears, the court found that the improvements were not made by the defendant until 1898, and were then made so that the defendant could more conveniently use the land for a pasture. Temporary improvements do not constitute such improve-

Allen v. Fitzgerald.

ments as will bar the owner of land from asserting title thereafter. Moore v. Pierson, 6 Iowa 279, 71 Am. Dec. 409. Such improvements as were made in 1898 were not induced because of any agreement or representation from Day, or in reliance upon Day's conveying the land to him. Day had never promised, and, so far as the findings and evidence show, the defendant had never expected to receive, any deed from Day. He relied fully upon his tax title. He testified that he did not expect to receive a deed from Day; that he believed, until this suit was brought, that he had, through Day, a good tax title in the property. When possession was demanded, the defendant claimed to own the land under the tax title of record. When an occupant of real estate in good faith, under a color of title, makes valuable improvements thereon, and thereafter, in a proper action, is found not to be the owner, he is entitled to such equitable consideration, with reference to such improvements, as is contemplated, by section 2021 Revised Statutes 1898. 3 Pom. Eq. Jur., sec. 1241. The equitable rule that one who enters into possession of real estate under a verbal promise from the owner to convey the title, and thereafter makes permanent and valuable improvements thereon in reliance on such promise, is entitled to a specific performance of the contract, does not apply to this case, because Day did not promise to convey the land, or to do anything he did not do, except to pay his half of the note; and also for the reason that the improvements amounting to $75 were made in 1898 for the convenience and accommodation of the defendant in pasturing the land. We are of the opinion that there is sufficient evidence in the record to sustain the findings excepted to, and see no reason why the plaintiff should be estopped from setting up the invalidity of the tax title held by the defendant. Upon the whole record, we do not find that the defendant has any equitable rights in the land. In making the decree that the defendant should recover

the amount paid out for taxes and improvements, with interest, less the rental of the property, the trial court granted the appellant all he was entitled to under the findings and testimony. The judgment of the district court is affirmed, with costs.

*Baskin* and *Bartch, JJ.*, concur.