# THE SUPREME COURT

OF THE

# STATE OF UTAH.

FEBRUARY TERM, 1904.

*(Continued from Volume 27.)*

---

FRANZ JUNGK, ADOLPH V. WEISE, ADOLPH A. STROHN and HUGO GUIDO REITZENSTEIN, Respondents, v. GRANT SNYDER, Defendant, and P. L. KIMBERLY, Appellant.

### No. 1542.  (78 Pac. 168.)

1. **Taxation: Statute: Sale: Validity.**

   Tax sales being made exclusively under statutory authority, the provisions of the statute conferring such authority must be fully complied with, and any substantial departure therefrom, prejudicial to the owner of the property, will invalidate the sale.[1]

2. **Same.**

   Where the statute (Sess. Laws, 1896, chap. 129, p. 423) provides that the name of the owner of the property and his post office address "so far as possible to obtain same from.... county records or otherwise" shall be entered in the assessment book, the failure of the assessor to avail himself of such information, when the same is easily obtainable, and his assessment of such property in the name of "unknown," renders a sale of such property after notice addressed to "unknown," void.

---

[1] Olsen v. Bagley, 10 Utah 492; Eastman v. Gurrey, 15 Utah 410; Asper v. Moon, 24 Utah 241; Moon v. Salt Lake County, 27 Utah 435.

(Decided April 30, 1904.)

Appeal from the Third District Court, Tooele County.—*Hon. C. W. Morse*, Judge.

Action to quiet title to a certain mining claim. From a judgment in favor of the plaintiffs, defendant Kimberly appealed.

AFFIRMED.

*Messrs. Snyder & Wight* for appellant.

*A. L. Hoppaugh, Esq.*, for respondents.

STATEMENT OF FACTS.

This is an action to quiet title to a certain patented mining claim known as the "Henrietta," situated in Ophir mining district, Tooele county, Utah. The evidence shows that deeds were on record prior to the application for a patent showing title in nearly all of the plaintiffs, but the records of the land office show only three of the plaintiffs made entry for a patent, namely, Adolph V. Weise, Adolph A. Strohn, and Hugo Guido Reitzenstein, they being the original locators of the mining claim. A patent was issued in due time to these parties together with the others who had succeeded to a portion of Strohn's interest. The parties who had acquired a part of Strohn's interest deeded such interest in 1892, to plaintiff Jungk.

Defendant Grant Snyder, in the joint answer filed by the defendants herein disclaims any interest in or to said premises.

Defendant Kimberly claims title by virtue of a tax deed based upon certain tax proceedings originating in Tooele county in the year 1896. While the records of Tooele county, in 1896, and for a long time prior thereto

show the record title to the Henrietta mining claim to be in the plaintiffs, Weise, Strohn and Reitzenstein, and in the grantors of the plaintiff Jungk, neither the final receipt, patent, nor subsequent conveyances were of record at the time of the commencement of this suit, nor at the time they were offered in evidence. The assessor of Tooele county, in the year in question (1896), was furnished a list of patented mining claims by the State Board of Equalization, and from this list he assessed the property in question for taxes. The assessment was entered upon an assessment roll used in Tooele county that year which was ruled with lines and headings over blanks to be filled by the assessor. These headings and the entries made concerning the property in question were, substantially in the following form:

| Name of Owner, Possessor or Unknown Owner. | Portion of Lot or Section, describe by stating fractional parts or by metes and bounds. When lots, blocks or parts of section are not adjacent, enter each parcel of land on a separate line. | Lot or Sub-division of Section. | No. of Acres. | Value of Real Estate. | Total Value of Property. | State Tax Levy. | County Tax Levy. | Total Amount of Tax Assessed. |
|---|---|---|---|---|---|---|---|---|
| Unknown. | Henrietta. | 87 | 20.60 | $103. | $103. | .82 | .72 | 1.54 |

The owners of the Henrietta mining claim were unknown to the assessor of Tooele county. They had never lived in the county, and at the time of the assessment were absent therefrom, and their names and residences were not known to the assessor personally. The collector mailed a notice of the assessment directed to "Ophir, unknown, Henrietta Claim." On the first Monday in December, 1896, the collector advertised in a newspaper published and of general circulation in Tooele county, a list of delinquent taxes by districts and precincts as required by law. The taxes assessed against the Henrietta mine not having been paid, were listed and advertised as "Henrietta Mining Claim, Lot 87, owner unknown; total tax $1.54. The property was

subsequently sold at public auction for the sum of $3.84, to pay the delinquent tax. One J. B. Hickman, being the highest bidder, received a certificate of purchase which he assigned to W. C. Hall, who, in due time, received a deed to the property. The claim and interest of W. C. Hall, was, by mesne conveyance, transferred to defendant P. L. Kimberly.

The court among other things found:

"6. That in the year 1896, the county assessor in and for Tooele county, attempted to assess for said year in the name of 'Unknown' the above-described premises, and attempted to assess and value said premises for the purposes of taxation at the sum of one hundred and three dollars. That the said assessor, in making said assessment or any of the tax proceedings herein recited, did not give the name of the person or persons to whom said property was claimed to be assessed, nor attempt to assess the same in any name, except in the name of 'Unknown.' That from the records in the county recorder's office in and for Tooele county, Utah, and through other inquiry, the names of the owners of said premises could by the exercise of reasonable diligence have been obtained by said assessor, but that the said assessor made no search or examination of the records of Tooele county for the names of the owners of said premises, and the evidence herein does not show that any inquiry of any kind was made to ascertain who the owners of said premises were. That none of the owners of said premises were in any way or manner notified or informed of said alleged assessment or tax.

"8. That thereafter, and within the time allowed by law, the board of county commissioners in said county met to examine the assessment book and equalize the assessment of property assessed in said county, including the alleged assessment herein described, but that neither the county auditor nor any other person notified the owners of the premises herein described, nor any of them, of the meeting of said board, nor were the

owners of said premises in any way informed of the meeting of said board of equalization.

"9.   That thereafter, on or about the first day of July, 1896, the duplicate assessment roll of said county, duly certified by the auditor of said county, was delivered to the collector of said county for purpose of collection, but that the said county collector did not furnish to the owners nor to any of the owners of said premises, nor leave at their residence, nor the residence of any of them, any notice of the amount of tax so attempted to be assessed as aforesaid, nor any notice at all.   That the only notice of any kind given or attempted to be given by said collector concerning said tax was a notice addressed and mailed to 'Ophir Unknown' and that none of the owners of said premises were notified or informed of said tax.   That the said collector made no effort of any kind to ascertain who the owner or owners of said property might be, and made no attempt to inform any person of said tax, except by mailing a notice to 'Ophir Unknown,' as aforesaid.

"15.   That the pretended tax proceedings hereinbefore set forth and the pretended tax sale hereinbefore set forth were invalid, and passed no title to the defendant P. L. Kimberly.   That the defendant, P. L. Kimberly, should be restrained and enjoined from claiming any interest in or to said premises adverse to the plaintiffs, and restrained and enjoined from setting up or claiming or pretending to have any interest under said tax sale or tax proceedings; and that the title of the plaintiffs herein should be quieted."

A decree was entered in favor of plaintiffs in accordance with the foregoing findings.   Defendant Kimberly appeals.

McCARTY, J., after making the foregoing statement of facts, delivered the opinion of the court.

The important question presented by this appeal is, did the assessor of Tooele county, under the circumstances, comply with the provisions of the statute then in

force providing the manner and form in which property should be listed and entered upon the assessment books, by listing the property in question to owner "Unknown?" and, also, was the notice of such assessment which was transmitted through the mails directed to "Ophir, Unknown" a substantial compliance, under the circumstances, with the statutes?

Section 43 of the Revenue Act of 1896 (Sess. Laws '96, chapter 129, p. 423) among other things, provides that "The State board of equalization must prepare and furnish to each county, an assessment book with appropriate headings, in which must be listed by the county assessor of each county, all property within the county, and in which must be specified in separate columns under the appropriate head:

"1. The name of the person to whom the property is assessed, together with the postoffice address giving the street and number or the number of lot and block if practicable of such person so far as possible to obtain same from taxpayers' statements, county records or otherwise.

"4. Mines and mining claims by name and number of lot."

Section 50 provides that "The State board of equalization shall furnish the board of county commissioners, annually . . . . . a list of all patents of mining locations," etc.

Section 46 provides that "As soon as completed, the assessment book mentioned in section 43, "must be delivered to the county treasurer, who shall furnish to each taxpayer by mail to addresses noted, postage prepaid, or leave at his residence or usual place of business, if known, a notice of the kind and valuation of property assessed against him," etc.

It will thus be observed that under the foregoing provisions of the Revenue Act, in force at the time of the levy and sale complained of were made, it was the duty of the assessor to list and enter the property assessed in his county under the proper headings and to

enter the names of the owners of the property assessed so far as possible to obtain the same from *taxpayers' statements, county records or otherwise.*

In the case before us the record shows that notwithstanding that the records of Tooele county showed the title of the Henrietta mining claim to be in at least three of the plaintiffs herein, whose names and claim of title to the property could have been readily discovered by. an examination of the records, no attempt was made through this or any other source by the assessor to discover and procure the names of the owners of the property. Not only could this information have been easily obtained from the county records, but it could have been procured from the United States Land Office where the information of the existence of the patent was obtained by the State board of equalization.

This court following the great weight of authority has held in a number of cases that as tax sales are made exclusively under statutory authority, the provisions of the statute conferring such authority must be fully complied with, and any substantial departure therefrom, prejudicial to the owner of the property, will invalidate the sale. Olsen v. Bagley, 10 Utah 492; Eastman v. Gurrey, 15 Utah 410; Asper v. Moon, 24 Utah 241; Moon v. Salt Lake County, 27 Utah 435, 76 Pac. 222; Black, Tax Titles, 154-155; Houghton County v. Auditor General, 41 Mich. 28.

Mr. Cooley, in his work on Taxation, p. 470, says: "The officer who makes the sale sells something he does not own, and which he can have no authority to sell except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action, and which, under the law are conditions to his authority. If these fail the power is never created. If one of them fails it is as fatal as if all failed. Defects in the conditions to a statutory authority cannot be aided by the courts; if they have not been observed, the courts cannot dispense with them, and thus bring into existence a power which the statute only

permits when the conditions have been fully complied with.''

And again the author says: ''It is therefore accepted as an axiom when tax titles are under consideration, that a condition to their validity is that there should have been a substantial compliance with the law in all the proceedings of which the sale was the culmination.''

It is apparent that neither the letter nor the spirit of the law has been complied with in this case.

While section 21 of the Revenue Act referred to, provides that ''If the name of the absent owner is known to the assessor, the property must be assessed in his name; if unknown, the property must be assessed to 'unknown owners,' section 43 also provides that the name of the owner of the property together with his postoffice address ''so far as possible to obtain from . . . county records or otherwise'' shall be entered in the assessment books under the proper heading, which clearly shows that it is the duty of the assessor to avail himself of the information thus furnished by the public records, to ascertain the name or names of the owners of taxable property in his county.

''Property is to be listed against the owner or other person primarily liable, where his name can be ascertained, and if assessed to another or to persons unknown the tax is void. But the assessor, when unable to discover who is liable for the tax may assess it to unknown owners. If the owner's name could have been ascertained from the public records or otherwise, however, the property cannot be assessed to unknown owners.''

Ency. of Law (1 Ed.), 212-213, and cases cited in note.

The assessor in this case having failed to observe and follow the plain provision of the statute, to the prejudice of the owners of the property in question, the sale was a nullity. The record shows several other irregularities in the tax proceedings under

consideration, which are relied upon by respondents as a ground of recovery, but we deem it unnecessary to consider them.

The findings and judgment of the trial court are fully sustained by the record.

We find no reversible error in the record and the judgment of the district court is therefore affirmed with costs.

BASKIN, C. J., and BARTCH, J., concur.