TINTIC UNDINE MINING CO. v. ERCANBRACK et al.

No. 5872. Decided January 7, 1938. (74 P. [2d] 1184.)

*Soule & Spalding,* of Salt Lake City, and *J. Rulon Morgan,* of Provo, for appellants.

*Robinson & Robinson,* of Provo, for respondent.

LARSON, Justice.

Plaintiff brought this action in the district court of Juab county to quiet title to certain mining claims. Plaintiff's title is based upon a deed from Juab county and is founded upon a sale for delinquent general taxes for the year 1927. The validity of the tax sale proceedings is the only question involved. The trial court upheld the tax sale proceedings and entered judgment for plaintiff. Defendants appeal.

Their position may be summarized thus: The assessment and sale of the property were unlawful and void because:

(1) The descriptions in the assessment roll and throughout the entire tax proceedings were erroneous and insufficient. (2) The property was neither assessed nor sold in the name of the owner.

We shall state the facts from which the controversy arises and then discuss the points in order. The property involved consists of two patented lode mining claims, to wit, "Wind Ridge" and "Winridge No. 2," in the Tintic Mining District, Juab County. Patent on the two claims was issued in 1899 to appellant, Charles F. Ercanbrack, and William T. Ercanbrack, who was the predecessor in interest and title of the other appellants. This patent was recorded in the office of the county recorder in 1909 and gives the location of the claims as "Lot No. 3615, embracing a portion of Section 31, in Township 10 South, of Range 2 West, Salt Lake Meridian, containing 14.447 acres, more or less" together with a metes and bounds description of each claim. The survey and certificate number is 2545 as shown by the patent. The claims were originally located at the same time and overlap. Charles F. Ercanbrack, appellant, was owner of an undivided one-fourth interest in the lode claim patented as "Wind Ridge," and an undivided one-half interest in the lode claim patented as "Winridge No. 2." The other patentee, William T. Ercanbrack, died. His undivided interest was distributed in undivided interests to his heirs at law, which decree of distribution was recorded in 1918. From that date until the auditor's tax deed in April, 1932, the record title stood as follows: Wind Ridge: Charles F. Ercanbrack, one-fourth interest; Ruth Ann Ercanbrack, one-fourth interest; Ruth Esther Burraston, Alta M. Walker, Olive M. Austin, and Arvilla Vetter, each one-eighth interest. Winridge No. 2: Charles F. Ercanbrack, one-half interest; Ruth Ann Ercanbrack, two-twelfths interest; Ruth Esther Burraston, Alta M. Walker, Olive M. Austin, and Arvilla Vetter, each one-twelfth interest. All of said interest were undivided.

From 1919 to 1926, inclusive, the property was assessed as one assessment to all the appellants jointly, and taxes were

paid. In 1927, the assessor split the assessment into three entries. He assessed Walker, Austin, and James Burraston, a stranger to the title with "⅔ of ½ interest of 14.447 acres." He assessed Arvilla Vetter with "⅔ of ¾ interest in 14.447 acres." He assessed Charles F. Ercanbrack and Ruth Ann Ercanbrack with "⅓ of ½, ⅓ of ¾ interest in 14.447 acres." (This is the year's assessment through which plaintiff deraigns title, and is assailed on several grounds: The assessment covers a total of 15/12 of the property; it does not show the interest of the parties in each tract or claim; an assessment is made in the name of a stranger to the title; the assessor segregated undivided interests into acreage allotments to each.)

In the published notice for delinquent taxes, the assessment to Burraston, Walker and Austin is described as "Wind Ridge and *Wind Ridge* No. 2, Lot No. *2615*," and the assessment to Arvilla Vetter is described as "Wind Ridge and *Wind Ridge* No. 2, Lot No. 3615." The italics are supplied to indicate the erroneous description. The errors in fractional parts are also carried forward here. In the published notice of the May sale in 1932, at which respondent's predecessor bought from the county, the description in the sale against Arvilla Vetter is given as in the delinquent list, but the sale against Burraston, Walker, and Austin is given as lot No. 3615, whereas it was No. 2615 in the delinquent list. On the tax sale record, the property was listed as *block 3615*. The deed from the county to Miller, plaintiff's predecessor, is identical with the certificate of sale.

In the findings of fact and the decree, the following factual discrepancies occur: The one claim is now designated as "Winridge No. 2," its real name, but through all the tax proceedings it was carried as "Wind Ridge No. 2," and in one finding as to each mining claim the number 3615 is given as a *survey* number, when in truth it was the *lot* number. In another finding the number *3615* is given as the survey number of the Wind Ridge claim, while the number *5615* is given as the survey number of the Winridge No. 2. (The survey

number of both claims is 2545, as appeared of record.) Still again the findings recite that the claims are "Lode number 3615, as designated by the Surveyor General." And the decree in describing the properties describes them as *survey* number 3615, and gives the Wind Ridge as an area of 5,509 acres and the Winridge No. 2 as 8.938 acres, although the record is silent as to the area in either claim and there is no information from which it can be computed. Summarized, the following irregularities appear in the descriptions in the proceedings: (a) Assessments made, in part, in name of stranger to title; (b) names of some owners of undivided interests are omitted in tax proceedings although such names appeared of record; (c) mining claims were assessed and described by wrong names; (d) no township, range, or section was given although the same appeared of record; (e) the surveyor general's lot number was variously given as a lot number, a survey number and a lode number; (f) the number itself throughout the proceeding was variously given as 2615, 3615, 5615; such number furnishing the only identification clues; (g) more property was assessed than existed, 15/12 in interests being assessed; (h) undivided interests upon which the taxes had been paid were sold; (i) the assessor sought to assess undivided interests in divided acreage; (j) the assessor erroneously and arbitrarily divided the overlapping acreage of two claims between them; (k) the same description is not used in the tax sale as in the assessment, nor in the tax deed as in the tax sale; nor in the deed from the county as in the tax proceedings; nor in the findings and decree as in the tax and sale proceedings. And, upon these errors, appellants contend the tax sale proceedings were and are void. At the outset we state that each of the propositions (a) to (k), inclusive, is a correct statement of facts as disclosed by the record. Do these facts, then, void the sale?

It is elemental, and settled beyond argument in this jurisdiction, that tax sale proceedings and statutes are strictissimi juris. The sales are made exclusively under statutory

authority. The seller is making a sale not coupled with an interest, and derives his authority solely from the statute, and it is derived from no rule or principle of the common law. He can have no authority to sell except as he is made the agent of the law for that purpose, and, if the steps necessary to precede his action fail, he is not invested with legal right to make the sale; if one step fails, they all fail. The rule, therefore, is that all the preliminary requirements of the statute, made conditions to the exercise of the right and power to sell, and designating the various proceedings which culminate in the sale, must have been strictly complied with. The officers who execute this power should follow the steps outlined for its exercise with precision. It is a special jurisdiction and must be strictly pursued. As was said in *Wister* v. *Kemmerer*, 2 Yeates 100, "An exact and punctual adherence to the laws can alone divest the title of lands on a sale for nonpayment of taxes." When the statutes governing the sale of lands for taxes direct an act to be done, or the manner, time, form, or place of doing it, such act must be done as prescribed, and the statutes must be strictly, if not literally, complied with. *Jungk* v. *Snyder*, 28 Utah 1, 78 P. 168; *Moon* v. *Salt Lake* County, 27 Utah 435, 76 P. 222; *Asper* v. *Moon*, 24 Utah 241, 67 P. 409; *Bean* v. *Fairbanks*, 46 Utah 513, 151 P. 338; *Hatch* v. *Edwards*, 72 Utah 113, 269 P. 138; *Olsen* v. *Bagley*, 10 Utah 492, 37 P. 739; *Eastman* v. *Gurrey*, 15 Utah 410, 49 P. 310.

Upon this basis we shall consider the points raised, (a) to (k) supra, as presenting three questions: (1) Was the error in the name of the party assessed as owner fatal? (2) Were the errors in description of the property fatal? (3) What is the effect of the differences in description in the various instruments through the tax proceeding? We note them seriatim.

The statute, section 80-5-12, R. S. Utah 1933, section 5884, Comp. Laws Utah 1917, reads:

"If the name of the owner or claimant of any property is known to the assessor, or if it appears of record in the office of the county recorder where the property is situated, the property *must be assessed to such name;* if unknown to the assessor, and if it does not appear of record as aforesaid, the property must be assessed to 'unknown owners.' " (Italics added.)

The record showed the names of the owners of this property in undivided interests. In 1927, the assessor segregated into three parts the assessment and levy on the property, and divided it into acreage, assessing to appellants, Walker and Austin and one James Burraston, a stranger to the title, 14.447 acres in undivided interests. Burraston was not an owner nor did he appear of record as an owner; nor did Walker and Austin own 14.447 acres at all, and no amount cojointly with Burraston. He was merely the administrator of the Estate of Ruth Esther Burraston, whose estate owned a one-eighth interest in the Wind Ridge and a one-twelfth interest in the Winridge No. 2 claims. Section 80-5-13, R. S. 1933, section 5877, Comp. Laws 1917, provides that, when a person is assessed as executor or administrator, his *representative designation must be added* and the assessment entered on a separate line from his individual assessment. No such designation was added here. In *Asper* v. *Moon,* supra, it was expressly held that an assessment of property held in individual interests assessed to one of the owners, "et al.," was not a compliance with the statute requiring the property to be assessed in the "names of the owners" and void. In the instant case, not only was the assessment in part at least in the name of the wrong owner, but the property itself, which had a definite recorded name, was assessed under a wrong name; individual assessments of the undivided interests were not made, nor was the whole property assessed to all of the owners jointly, but part of the co-owners were segregated from the others and then joined with strangers to the title, and assessed on a mining claim which itself had a patented recorded name, but listed by the assessor under a wrong name; a

wrong interest assessed and a wrong area. Such a jumble of wrong names could easily mislead and is clearly not a compliance with the statute under many decisions of this court. The records are at the courthouse, and the assessor must not be permitted to deprive an owner of his property by neglect and palpable inaccuracies in his official work. *Salt Lake Investment Co.* v. *Oregon Short Line R. Co.*, 46 Utah 203, 148 P. 439.

As to the errors in description of the property, they are even more serious and more evident. When real property is assessed or sold for taxes, the description must be such that the property can be definitely known and located. The tax becomes a lien on the property, and the description must be definite enough for the lien to attach to ■ the property without extraneous evidence. If there is no lien, there can be no sale. It must be definite enough so the owner will know just what property is being sold, and a prospective purchaser will know what particular property he could buy, so as to determine its value. By all these tests this assessment and tax sale must fail. No township, range, or section is given in which the property is located, though the same appeared of record.

The statute requires that, where land has been sectionalized by the government, the section or fractional section must be given and all parcels and subdivisions. The assessments here involved simply locate the property in the Tintic Mining District, lot No. 3615. Nothing to show the township in which the lot is located, or whether or ■ not it is a city lot, platted as such, and in what city. No lien could attach by virtue thereof because no one could know the land to which it attached. Furthermore, the published delinquent list gives the one sale as lot 2615, an entirely different lot, with no identification as to where the lot is located. And the advertised May sale, from which plaintiff's alleged title is deraigned, listed it different from that in the delinquent sale. And in the valuation notices, the property is described as *block 3615*, an entirely different

description from a lot, and no plat given where the block may be found.

The trial court found plaintiff was the owner of certain land described merely by name and the surveyor general's *survey No. 3615;* and the other tract as surveyor general's *survey No. 5615;* no reference to sections, lots, or blocks. The surveyor general's number for all the lands in suit was *2445,* and not 3615, which was a lot number in section ·31, township 10 south, range 2 west, of Salt Lake Meridian; nor was it survey No. 5615. It is also described in the findings as lode 3615, a portion of section 31 aforesaid. Now the decree describes the land as Lot 3615, and twice as surveyor general's survey No. 3615, which survey number does not cover the property in suit.

Again, the record shows that lot 3615 in section 31, township 10 south, range 2 west, of the Salt Lake Meridian, contains 14.447 acres, more or less, and that it was surveyed as surveyor general's survey No. 2445. Within that lot are the two mining claims involved in this action which overlap, and no area is given for either. The trial court found that the surveyor general's survey No. 3615 contained 5.509 acres and survey No. 5615 contained 8.938 acres, which are the lands he found plaintiff entitled to, although there is no evidence with respect to such surveys in the record.

Each assessment and each sale covers undivided interests in two different pieces of property, the Wind Ridge and the Wind Ridge No. 2. The various interests of the persons to whom the assessment is made are lumped together, and also both tracts treated as one piece, although the interests of the persons in one tract were not the same as in the other tract. The recorded patent showed the property to be a lode mining claim known as the *Wind Ridge* and a lode mining claim known as *Winridge No.* 2. The assessor and the treasurer put the two together as the Wind Ridge and *Wind Ridge No.* 2, a different piece of property. They suggest on their face as much difference as the names "Winter and Winterton," "Goff and Gough," or "Cluff

and Clough." When the property is known by a specific name, which name is of record, the assessor has no valid excuse for such errors in the name and thereby divest an owner of his title to property. And the name was the only attempt made to describe the property. We again call attention to the fact that the fractional interests assessed were 15/12 of the whole, and the total acreage assessed was nearly three times the whole area. Such assessments and sales cannot be upheld to divest an owner of his title. *Madsen* v. *Bonneville Irrig. Dist.*, 65 Utah 571, 239 P. 781; *Olsen* v. *Bagley*, 10 Utah 492, 37 P. 739; *Allen* v. *Fitzgerald*, 23 Utah 597, 65 P. 592; *Moon* v. *Salt Lake County*, 27 Utah 435, 76 P. 222; *Asper* v. *Moon*, 24 Utah 241, 67 P. 409; *Booth* v. *Cooper*, 22 Idaho 451, 126 P. 776; *Eastman* v. *Gurrey*, 15 Utah 410, 49 P. 310; *Fulton* v. *Krull*, 200 N. Y. 105, 93 N. E. 494.

Tax sale proceedings are predicated and founded upon failure to pay a tax assessed against the property, and therefore no validity can attach to any sale except of the property assessed and delinquent for failure to pay the tax levied on the assessment as made. Any advertisement for delinquency, and on the sale of the property, in the name of a different owner, or of property of a different description than that assessed, has no foundation and is therefore void. So, too, an auditor's tax deed to the county, or a deed from the county, describing a different piece of property than that assessed or advertised for delinquency, or sold for non payment of tax, cannot convey or divest the owner of title. The validity of a tax title depends upon the validity of all the proceedings upon which it is based, and it is no better or stronger than its weakest link. If one step fails, they all fail. By what is here said, we do not hold that in every case any one of the irregularities appearing in this record and set forth above and numbered from (a) to (k), inclusive, renders a tax sale void. We have set them forth as indicating many of the irregularities which assessors and other taxing officials through misunder-

standing or carelessness allow to creep into their records and proceedings. What may in one case be a mere irregularity may in another case, due to the particular facts, assume more significance and even void a sale. Taxing officials should use every reasonable care and caution to avoid them, and make the entries in their records with care and scrutiny so as to show the necessary data required by both the spirit and the letter of the law.

The trial court apparently based its judgment upon two provisions of the statute and which respondent insists cure any defects in the proceedings. But respondent misconstrues the statutes upon which it relies. Section 80-5-4, R. S. 1933, section 5876, Comp. Laws Utah 1917, provides, inter alia:

"The county assessor must * * * ascertain the names of all taxable inhabitants and all property in the county subject to taxation * * * and *must assess such property to the person by whom it was owned or claimed, or in whose possession or control it was,* at 12 o'clock m. of the 1st day of January next preceding. * * * *No mistake in the name of the owner or supposed owner of property renders the assessment thereof invalid.*" (Italics added.)

Section 80-10-37, R. S. 1933, Section 6046, Comp. Laws 1917, reads:

"When land is sold for *taxes, correctly imposed,* as the property of a particular person, *no misnomer of the owner or supposed owner,* or other mistake relating to the ownership thereof, affects the sale or renders it void or voidable." (Italics added.)

The first section quoted refers to the assessment, the other to the sale. The former expressly requires that the property be assessed to the *owner,* the *claimant,* or the *possessor.* It cannot be otherwise assessed unless the owner is unknown to the assessor and does not appear of record and there be no claimant to the property, or no one in possession thereof, when it must be assessed to "unknown owners." Section 80-5-12, R. S. 1933, section 5884, Comp. Laws 1917. What then is the meaning of the itali-

cized sentence about a "mistaken in the name"? Clearly, that means when the owner is unknown to the assessor and does not appear of record in the recorder's office, the property may be assessed to the claimant, or to the unknown owners and the claimant, or to the person in possession. Or, if my property, which should be assessed to Martin M. Larson was assessed to Martin *A.* Larson or perhaps to *Morten M.* Larson, that would be a mistake in the name of the owner which would not affect the validity of the assessment. But to assess my property in the name of W. H. Folland is not a mistake in the name of the owner but is an assessment in the name of another person not the owner. The clause does not mention mistakes in the ownership, and the person who is the owner, but mistakes in the *name of the owner.*

Now as to the other section relative to sales, be it noted that the section is really in two parts. The first part pertains to the assessment and the second part to the sale. "When land is sold for *taxes, correctly imposed, as the property of a particular person"* (to be correctly imposed a tax must be imposed in the name of the owner or record owner if any such there be), then "no misnomer of the owner or supposed owner" (the holder of a record title, claimant or person in possession) "affects the sale or renders it void or voidable." (Italics supplied.) This emphasizes the fact that, if taxes are *not correctly imposed,* it does void the sale. At most it can only mean that, when the assessment and levy of taxes have been correctly made against the particular property in the name of the owner thereof and are delinquent, the owner cannot complain of mere irregularities in his name in the subsequent sale proceeding. But even this contains no saving clause as to errors in description or other defects. These sections have no application to cases where the name of the owner is known or is shown by the record in the office of the county recorder.

From an analysis of the statutes and the authorities, the following general propositions may be deduced:

(1) An owner of real property, or any one interested therein, may be divested of his title or interest by a sale for delinquent taxes, properly imposed, if the sale proceedings conform to the statutory requirements.

(2) To form a foundation for a sale for unpaid taxes, real property must be assessed (a) in the name of the owner, if known to the assessor; or (b) if the name of the owner is not known, then it must be assessed in the name of the holder of the record title; or (c) if the owner is unknown and the county recorder's records do not show an owner of the property, it should be assessed in the name of the person in possession or to "unknown owners"; or (d) where property is held jointly or in undivided interests, the property may be assessed in the names of all such owners jointly, or each may be assessed separately for his proper fractional undivided interest in the whole property. The assessor should not segregate acreage to each individual.

(3) The property assessed should be so described as to cover the land actually owned, or according to the description as appears of record in the county recorder's office, as to metes and bounds. The assessment should show the meridian, township, range, and section, and fractional part thereof, where the land has been sectionalized by the government. The description must be definite enough not only to identify the land, but to advise the owner not only that it is his property, but the particular tract thereof; and to enable a prospective purchaser, if it goes to sale, to identify the land and to estimate its probable value.

(4) Where land has not been sectionalized, or not so surveyed as to be tied to standard government monuments or corners, it should be described by official lot numbers, surveyor general's survey number, if they appear on the county records, and by its correct name, if it has a name of record in the recorder's office, such as mining claims patented or unpatented.

(5) Where the land is within a platted area, it should be described showing the city, town, or addition platted, the block, lot, or fractional part thereof, at least as definite as shown by the record.

(6) The advertised delinquent list must conform as to owner and description with the assessment roll; the certificate of sale should conform to the delinquent list; the auditor's tax deed to the certificate of sale; and, if the county then sells to a private party, the description should be within the description of the auditor's tax deed. The delinquent list should show the amount of tax on the land and the time and place of sale.

(7) Distinct tracts should be assessed and sold separately.

It is evident that by such tests and under such principles the sales in this case were and are void. The descriptions used in the assessment and sale proceeding involved in this action were fatally defective in not showing range, township, or section; no metes and bounds descriptions given, or any other proper media by which the lands could be identified or located, so the tax lien could attach thereto or the owner be apprised that his property was assessed and was being offered for sale for delinquency. The descriptions being fatally defective, the sale was and is void. We may add that the voiding of a sale does not relieve the land from taxes. Under the statute, if an assessment is erroneous or defective, the treasurer should not sell the property, but report the fact, and the Board of County Commissioners must cause the assessor to enter the uncollected taxes upon the assessment book of the next succeeding year, on the basis of the valuation and rates of the year for which they were erroneously assessed, to be collected as other taxes are collected thereon. R. S. 1933, 80-10-30. This protects the interest of the taxing bodies in their revenue and safeguards the owners in their property rights.

Appellants offered to pay into court for plaintiff or who-ever may be entitled thereto such amount as plaintiff or his predecessors may have paid the county as taxes on the property.

The judgment is reversed and the cause remanded to the district court of Juab county, with directions to enter a judgment in favor of the appealing defendants and against plaintiff and respondent upon payment into court of such amount as plaintiff or its predecessor has paid in taxes on the property, with legal interest thereon; costs to appellants.

FOLLAND, C. J., and HANSON and MOFFAT, JJ., concur.

WOLFE, Justice.

In concur for the reasons stated in the third from the last paragraph of the opinion.