Lars Larry JOHNSON, Appellant,

v.

Gordon L. MILLER and National Bank
of Alaska, Appellees.

No. 379.

Supreme Court of Alaska.

April 21, 1964.

James K. Tallman, of Bell, Sanders &
Tallman, Anchorage, for appellant.

Murphy L. Clark, of Hughes, Thorsness
& Lowe, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND
and AREND, JJ.

AREND, Justice.

Lars Larry Johnson as the plaintiff be-
low brought this action in 1957 against the
appellees and others as defendants below
to quiet title to certain real property de-
scribed in the complaint and on the official
plat of the property as

"Lot 1 of the Resubdivided Lot 18–A
and Lot 2 of the Resubdivided Lot 18–
A, Simonson Homestead Subdivision,
located in the SW ¼ of SW ¼ of Sec-
tion 23, Township 13 North, Range 4
West, Seward Meridian, in the An-
chorage Recording Precinct, Alaska."

The parties are in agreement as to the
following facts: The plaintiff acquired the
lots by quitclaim deed from James K. Tall-
man, who had purchased them at a tax sale
conducted by the Anchorage Independent
School District on October 14, 1954, and
then received tax deeds to the lots from the
school district. The defendant Miller, on
the other hand, acquired his title to the lots
from one Patricia Lee White and then
mortgaged, and later conveyed, them to the
defendant National Bank of Alaska. Mil-
ler was the last owner of record at the
time of the tax sale. The correct record
description of the property is as we have

shown it above, although the plaintiff claims that it can be and has been considerably shortened. In the delinquent tax roll and the newspaper publication thereof in connection with the tax sale, the two lots are described as follows, with variances from the record description shown in italics:

"Lot 1 of Resub of *18*, Lot 2 of Resub of *1* 18A, *Simonsen Subdv.*"

In the record appears the affidavit of the principal clerk of the Anchorage News, a daily newspaper, attesting that the delinquent tax roll was published in the Anchorage News "for a period of four insertions, commencing on the 13th day of April, 1954, and ending on the 4th day of May, 1954, both dates inclusive."

The primary issue between the parties is the validity of the tax title. The defendants have consistently maintained in the court below and on appeal that the tax title is void because the tax sale was not held according to law. Specifically, the defendants contend that the description of the subject property in the delinquent tax roll and the published notice thereof was incorrect, misleading and not in compliance with Alaska law in that it misnamed the Simonson Homestead Subdivision as "Si*monsen* Subdivision" and incorrectly described resubdivided lot 18A as resubdivided lot 18 in one place and as resubdivided lot 1 18A in another place. Furthermore, the notice of the delinquent tax roll had not been published for the full statutory period.

After considerable procedural skirmishing below, the defendants, on September 17, 1962, moved for summary judgment.[1] On April 2, 1963, the trial court decided the issue on briefs filed by the parties and granted the defendants' motion and in a partial summary judgment[2] declared null and void the claims of the plaintiff against the defendants and forever foreclosed the plaintiff from any interest or estate in the two lots described in the complaint.

The findings made by the court in support of its action are set forth in its memorandum decision as follows:

"The subdivision in which the land is said to be located in the published notice is listed as the 'Simonsen Subdivision.' The correct description of the subdivision should be 'Simonsen [*sic*] Homestead Subdivision.' This error combined with the defendant Bank's uncontroverted affidavit showing that there is also a Simonson Estate Subdivision in the same area is seriously misleading. Added to this omission to describe accurately the subdivision in which the assessed property is located are a series of inaccuracies in the descriptions of the particular lots involved. [The court then sets forth the incorrect descriptions argued by the defendants.]

"The statute under which the property was ordered sold requires that prior to any order of sale that there be prepared a delinquent tax roll and that ' * * * such roll shall show therein the property assessed * * *'. The same section of the statute requires publication of notice of the assessment which must also ' * * * describe each tract on the roll on which the tax has not been paid. * * *'[3]

\* \* \* \* \* \*

"The School District did not strictly comply with the statutory requirements and failure to do so affected substan-

1. In 1960 both parties had moved for summary judgments; but those motions were simultaneously denied about six months later.

2. The summary judgment was partial in form apparently for the reason that possible rights of Patricia Lee White against the defendants had not yet been determined.

3. The statute referred to by the trial court in its memorandum decision is 16–1–122 ACLA 1949. [AS 29.10.462 and 29.10.-465(a)].

tial rights of the taxpayers.[4] See *Dodson v. Thomason* [217 Ark. 747], 233 SW 2d 395 and *Stout v. Healey* [216 Ark. 821], 228 SW2d 45. [Italicized in the original.]

"Furthermore, I find that the period of publication was not sufficient. See *Early v. Dos* [Doe] [*sic*] [16 How. 610], 57 U.S.Reports 610 [14 L.Ed. 1079]. [Italicized in the original.]"

From the foregoing findings and the partial summary judgment it is evident that the trial court agreed with the defendants' theory of the case, set forth in their written memoranda in support of the motion for summary judgment, that the court which ordered the sale of Miller's lots for delinquent taxes was without jurisdiction to do so because the school district had not complied with the statutory prerequisites for such a sale. This is further evidenced by the trial court's approbative reference to the cases of Tintic Undine Mining Co. v. Ercanbrack[5] and Early v. Doe[6] in the memorandum decision.

In the Tintic case the Utah Supreme Court, in setting aside a tax sale, stated:

"It is elemental, and settled beyond argument in this jurisdiction, that tax sale proceedings and statutes are strictissimi juris. The sales are made exclusively under statutory authority. The seller is making a sale not coupled with an interest, and derives his authority solely from the statute, and it is derived from no rule or principle of the common law. He can have no authority to sell except as he is made the agent of the law for that purpose, and,

if the steps necessary to precede his action fail, he is not invested with legal right to make the sale; if one step fails, they all fail. The rule, therefore, is that all the preliminary requirements of the statute, made conditions to the exercise of the right and power to sell, and designating the various proceedings which culminate in the sale, must have been strictly complied with. The officers who execute this power should follow the steps outlined for its exercise with precision. It is a special jurisdiction and must be strictly pursued. As was said in Wister v. Kemmerer [Kammerer], 2 Yeates 100, 'An exact and punctual adherence to the laws can alone divest the title of lands on a sale for nonpayment of taxes.' When the statutes governing the sale of lands for taxes direct an act to be done, or the manner, time, form, or place of doing it, such act must be done as prescribed, and the statutes must be strictly, if not literally, complied with. [Citing cases.]"[7]

In the other case cited by the trial court, Early v. Doe, the Supreme Court of the United States declared that in the sale of land for nonpayment of taxes the law requires that every prerequisite to the exercise of that power must precede its exercise.[8]

In the Michigan case of Walsh v. Porter[9] certain lots were known and described for many years on the public records and in the tax assessments as being in Dowling's subdivision. In 1926 the taxes on the lots were unpaid, whereupon they were

---

4. Earlier in the memorandum decision the trial court had said: "Ordinarily, statutes authorizing a tax sale are strictissimi juris. (See *Tintic* [*Undine*] *Mining* [*Co.*] *v. Ercanbrush* [*Ercanbrack*] [*sic*] [93 Utah 561], 74 P.2d 1184; *Lyon v. Hunt*, 46 American Decisions, 216). * * *" [Italicized in the original.]

5. 93 Utah 561, 74 P.2d 1184 (1938).

6. 16 How. 610, 57 U.S. 610, 14 L.Ed. 1079 (1853).

7. Supra note 5, 74 P.2d at 1187. See also Sterling Realty Co. v. Relfe, 21 Cal.2d 164, 130 P.2d 410, 412–413 (1942); Shell Oil Co. v. Board of County Comm'rs, 165 Kan. 642, 197 P.2d 925, 930 (1948); Perry v. Maves, 125 Mont. 215, 233 P.2d 820 (1951); McCarthy v. Union Pac. R. Co., 58 Wyo. 308, 131 P.2d 326, 333 (1942).

8. Supra note 6, 16 How. at 618, 57 U.S. at 618, 14 L.Ed. at 1082–1083.

9. 256 Mich. 177, 239 N.W. 271 (1931).

listed on the assessment rolls as "Lots 1, etc., subdivision of part of block 100, White's plat," and advertised and sold under the latter description for nonpayment of taxes. Upon receiving notice to redeem, the tax delinquent owner of the lots filed his bill of complaint to avoid the tax sale on account of misdescription of the property and asked that the tax deed be declared a cloud on the title and set aside. In affirming the decree entered below in favor of the plaintiff owner, the Supreme Court of Michigan ruled:

"In the instant case, the description failed to refer to Dowling's subdivision, the known and recognized name of the plat. In the advertisement of sale, the lots were listed under the captions of the subdivision, and these were set forth in alphabetical order. One owning property in Dowling's subdivision, as the property was known and recognized, would have failed to find it set forth under the letters "D" or "W." The description did not conform with the original White plat which contained no lot numbers nor to the plat of 1859. Lots 1 and 2 of block 100 in the latter plat differ from those in Dowling's subdivision. Lot 8 does not exist at all in the plat of 1859. * * * A purchaser of property has the right to be properly informed of the nonpayment of taxes, and, if there were no sales of delinquent taxes of the lots listed under the name of "Dowling's Subdivision," one might easily be misled into believing that the taxes on the nine lots contained in this plat had been paid. In Watters v. Kieruj, 242 Mich. 537, 219 N.W. 673, we held that the description,

though sufficiently accurate for a private conveyance, was insufficient to give notice to redeem from a tax sale, unless it was correct in every detail. Under the peculiar circumstances of this case, we believe that there was a misdescription in the tax proceeding." [10]

In the instant case we consider as even more serious than the misdescription of the property, the fact that there was insufficient compliance with the publication period required by the statute. This requirement is contained in section 16–1–122 ACLA 1949 [AS 29.10.462 and 29.10.465 (a)] and reads:

"As soon as convenient after the completion of the delinquent roll, the assessor or other officer designated by the [city] council,[11] shall under the direction of the council *cause to be published* in the official newspaper of the [municipal] corporation, or in a newspaper of general circulation in the city, to be designated by the council, *once each week for a period of four successive weeks, a notice* under the hand of the clerk of the city, setting forth that the delinquent tax roll of real property for the year, naming it, has been completed and is open for public inspection at the office of the municipal clerk, *and that on a certain day not less than thirty days after the completion of the publication,* or posting, as the case may be, of such notice, the said roll will be presented to the district court of the division for judgment and order of sale. [Emphasis added.]"

As we stated earlier, the newspaper's affidavit of publication attested that the delinquent tax roll had been published "for

---

10. Supra note 9, 239 N.W. at 272–273. See also Huffman v. Henderson Co., 184 Ark. 278, 42 S.W.2d 221, at page 222 (1931), in which the court stated: "Many cases by this court have settled the law that a valid assessment is essential to a valid sale of the property taxed for the nonpayment of the taxes, and the description of the property assessed and

sold must be such as to apprise, not only the owner, but all other persons, of the property to be sold. [Citing cases.]"

11. The provisions of section 16–1–122 ACLA 1949, while they relate only to municipal corporations, were made applicable to school districts by section 37–3–54 ACLA 1949 [AS 14.15.430].

a period of four insertions, commencing on the 13th day of April, 1954, and ending on the 4th day of May, 1954, both dates inclusive."

The question that naturally arises is: How long is once each week for a period of four successive weeks and when was the earliest date on which the delinquent tax roll could be presented to the court for an order of sale under the wording of the statute? From a study of the cases in other jurisdictions dealing with the problem, we conclude that the statutory period of publication in this case was twenty-eight days.[12] Counting twenty-eight days from April 12, the date of the first publication, takes one to May 11. The statute then required a waiting period of thirty full days, or until June 10, 1954, before the tax roll could be presented to the court for judgment and order of sale. It appears from the record that the tax roll was actually presented to the court[13] on the 7th day of June—three full days before the statutory period had run.

The appellees point out in their brief that the same computations can be made with respect to the publication of notice and holding of the tax sale. Section 16–1–127 ACLA 1949 required that the sale ordered by the court should be at public auction upon publication of notice once each week for four successive weeks or by posting. In this case the notice was published for the first time on September 21, 1954; so the four weeks would not have expired until October 21, 1954. The sale, however, was held on October 14—seven days prematurely.

We conclude that the court which ordered the sale of the defendant Miller's property was without jurisdiction to do so

and that the judgment of the superior court should be affirmed.

In view of the foregoing we find it unnecessary to consider other errors specified by the appellant.

Affirmed.

12. Los Angeles County v. Payne, 82 Cal. App. 210, 255 P. 281 (1927); Kapp v. Vahlberg, 299 P.2d 159 (Okl.1956); Peterson v. Weber County, 99 Utah 281, 103 P.2d 652, 654–655 (1939); King County v. City of Seattle, 7 Wash.2d 236, 109 P.2d 530 (1941).

13. The court which we refer to in this opinion as having ordered the tax sale was the territorial court designated the District Court for the Territory of Alaska, Third Judicial Division.